**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-CV-61275-RAR

WENSTON DESUE, *individually and*
*as legal guardian of N.D. and M.D. and*
*all others similarly situated,*

      Plaintiff,

v.

20/20 EYE CARE NETWORK, INC., *et al.,*

      Defendants,

AND ALL CONSOLIDATED ACTIONS

_____/

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

      Plaintiffs Stephany Alcala; Benjamin J. Liang; Amber Lowe, on behalf of herself and her minor children C.B., K.B., M.B., and G.M; David Runkle; and Suzanne Johnson ("Plaintiffs"), submit this Unopposed[1] Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support ("Motion").

---

[1] Defendants' election not to oppose the instant Motion is not to be construed as an admission of any wrongdoing or agreement as to the ultimate viability of Plaintiffs' legal theories and shall not be construed as consenting to class certification for any purpose other than to resolve this matter consistent with the terms of the attached settlement agreement.  Accordingly, Defendants reserve all rights to defend themselves if this settlement is not approved and litigation continues.

## I.   __INTRODUCTION__

This case arises from a data breach in 2021 affecting a data platform of defendant 20/20 Eye Care Network, Inc. ("ECN" or "ECN"), a subsidiary of defendant iCare Acquisition ("iCare") (collectively with ECN, "Defendants") (the "Data Incident"). Plaintiffs allege that Defendants are accountable for the harm caused to Plaintiffs and approximately 4 million similarly situated adults and minors through their failure to properly secure and safeguard current and former patients' sensitive personally identifiable information (PII), including their names, dates of birth, Social Security numbers, and protected health information (PHI), such as the patients' medical identification numbers and health insurance information.  [ECF No. 52, ¶¶ 96, 97]  Despite thorough investigation, it remains unknown what specific information was taken and in whose hands this sensitive information is in, but what is known, is that it was stolen without authorization and, as a result, may be in the possession of person(s) who are not authorized to have it.  Thus, this Data Incident disclosed the information which Defendants were duty bound to keep private and did not. How the Data Incident occurred and Defendants' responsibility for it presented an atypical data breach class action with unique legal and factual issues that were not only litigated but resolved through a mediated settlement.

The proposed settlement provides relief to class members affected by the Data Incident in a variety of ways including reimbursement for out-of-pocket expenses, lost, time, and actual identity fraud as well as the option to receive identity fraud monitoring protection or an alternative cash payment.  As detailed further herein, Defendants have agreed to provide direct mail notice to the entire class population at their own expense,

outside of the settlement fund Defendants agree to establish. Defendants have comprehensive contact information for the class members and as a result can, with a strong degree of certainty expect that class members receive proper notice of the multiple benefits this proposed settlement will make available to them. Accordingly, and as set forth below, the Court should grant preliminary approval of the class action settlement.

## II.   CASE SUMMARY

### A.   The Data Incident

ECN is a managed vision care company that contracts with various eye care professionals to provide patient services and third-party administrative services.  20/20 Eye Care used a data platform to transmit and store Plaintiffs' and Class members PII and PHI. In September 2020, iCare acquired (ECN). iCare did not acquire a related business known as 20/20 Hearing Care ("HCN") but the 20/20 Eye Care data platform continued to provide services for both businesses.  [ECF No. 52 ¶¶ 19, 22, 90.]

Defendants collect and maintain PII and PHI for millions of patients.  Because of their involvement in the health care field, Defendants owed legal duties to Plaintiffs and Class Members to keep sensitive information confidential and protected from unauthorized disclosure or access, including duties under the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

### B.   Procedural Posture

In the wake of the Data Incident, six class actions were filed in the United States District Court for the Southern District of Florida.  These lawsuits include the above-captioned matter, *Desue v. 20/20 Eye Care Network, Inc.* No. 21-cv-61275-RAR; *Bowen*

3

*v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61292; *Fraguada v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61302; *Runkle v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61357; *Hoffman-Mock v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61406-WPD; and *Johnson v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61755-RAR (Johnson). All these matters are consolidated by Court order. [Order Consolidating Cases and Setting Status Conf., June 28, 2021, ECF No. 11; *see also* ECF Nos. 22, 35.]

On September 1, 2022, Plaintiffs filed their First Amended Consolidated Class Action Complaint, alleging four causes of action: (1) negligence and negligence *per se*; (2) unjust enrichment; (3) breach of confidence; and (4) violation of the Florida Deceptive Trade Practices Act (FDTPA). [ECF No. 37.] All these claims were asserted on behalf of a Nationwide Class, or alternatively, as to violation of the FDTPA, on behalf of a Florida Subclass. They also sought an award of actual or statutory damages as well as attorneys' fees and costs. [*Id.*]

Defendants filed a motion to dismiss the amended complaint, which the Court granted in part on March 15, 2022. [ECF No. 51.] In the Order, the Court held that Plaintiffs had established Article III standing because two Plaintiffs had established concrete and particularized injuries, including substantial risk of imminent identity, financial, and health fraud and theft; emotional anguish and distress resulting from the Data Breach, and increased time spent reviewing financial statement and credit reports to assess whether fraudulent activity occurred. [*Id.* at 6.] Other Plaintiffs also alleged actual misuse of their personal data. [*Id.* at 9-10.] And the Court held that Plaintiffs adequately pleaded traceability. [*Id.* at 11-12.]

But the Court dismissed without prejudice under Fed. R. Civ. P. 12(b)(6) the four specific causes of action.  The Court dismissed the negligence count because it comingled multiple negligence theories into a single count and did not identify which Defendant was responsible for various acts or omissions.  [*Id.* at 13-15.]  The Court next dismissed the unjust enrichment court, concluding that Florida law does not recognize indirect conferral of benefits through a third-party intermediary.  [*Id.* at 15-17.]  The Court held the breach of confidence claim failed because Plaintiffs failed to allege Defendants disclosed their PII and PHI and because no confidential relationship existed between the parties.  [*Id.* at 17-19.]  Finally, while the dismissed the FDTPA claim because Plaintiffs failed to plead cognizable actual damages, it nevertheless concluded Plaintiffs had standing to assert injunctive relief under the statute.  [*Id.* at 19-21.]

Plaintiffs filed a Second Amended Consolidated Class Action Complaint on March 29, 2022.  [ECF. No. 52.]  Plaintiffs asserted uncommingled negligence counts, specifically negligence against 20/20 Eye Care and negligence against iCare, negligent supervision by 20/20 Eye Care of its employees entrusted with access to the PII and PHI of Plaintiffs and Class Members, and a count under FDTPA.  On April 25, 2022, following a joint motion by the parties to extend the briefing dates for pleading challenges, Defendants filed a Motion to Strike Punitive Damages and Special Relationship Allegations [ECF No. 59], and on April 26, 2022, Defendants again moved to dismiss the complaint.  [ECF No. 60.]

In response, Plaintiffs filed an Unopposed Motion for Leave to File Third Amended Consolidated Class Action Complaint to refine factual allegations, amend some legal claims, and address concerns Defendants raised in its motions.  [ECF No. 62.]  On May 9,

2022, the Court granted the unopposed motion to file a new amended complaint. Thereafter, the parties filed a Joint Motion to Stay Proceedings to provide them time to engage in settlement efforts. [ECF. No. 65.]

    **C.**    <u>**History of Negotiations**</u>

    The parties agreed to mediate this matter before Judge John Thornton (Ret.), who has deep experience in Florida and Eleventh Circuit case law. In accordance with the parties' motion [ECF No. 65] the Court on July 11, 2022, ordered that mediation occur on July 25, 2022. [ECF No. 68.] The parties mediated that day via Zoom Video Conference. The arms'-length negotiations were hard fought with considerable exchange of information between the parties and Judge Thornton. The negotiations centered on Plaintiffs' ability to prove liability and damages since there were significant factual issues about injury and the manner in which the Data Breach occurred. The parties were unable to reach settlement that day. Nevertheless, settlement negotiations continued, and considerable progress was made toward settlement since the July 25, 2022 mediation. On August 1, 2022, the Court granted the Parties' Joint Motion for Extension of the Stay of Proceedings and for Extension of Deadline to File Mediator's Report. [ECF Nos. 69-70.] The parties advised the Court on August 15, 2022, that they hoped to reach a settlement in principle within days with Judge Thornton's continued oversight. [Joint Rpt. Regarding Mediation, ECF No. 71.] Following ongoing and extensive negotiations, on August 26, 2022, the parties advised the Court they had reached a mediated negotiated settlement. [Joint Status Report regarding Settlement, ECF No. 75.]

### III.   <u>SUMMARY OF THE SETTLEMENT</u>

The Settlement provides for the Defendants to pay $3,000,000 into a common fund. The benefits available to the Class Members to be paid from the Settlement Fund include:

a)  Class Members will be able to submit a claim for reimbursement for out-of-pocket losses reasonably traceable to the Data Incident of up to $2,500 per individual Class Member. To claim this benefit, Class Members will be required to provide documentation, and declare under penalty of perjury their belief that the claimed losses are due to the Data Incident.

b)  Class Members will also have the option to elect either thirty-six (36) months of identity monitoring protection or, in the alternative, a cash payment of $50.00 per person, and

c)  Class Members will have the right to make a claim for reimbursement for time spent of up to ten (10) hours at $25 per hour upon attestation. Class Members will simply affirm they have lost time resulting from the Data Incident and provide a brief description of the time spent.

d)  The Settlement Fund will also cover Class Counsel's Attorneys' Fees and Litigation Expenses (as awarded by the Court).

(Blatt Decl. Ex. 1, ¶ IV.2.1-4.)  To the extent the total amount of the Approved Claims at the end of the Claims Period exceeds or is less than the amount in the Settlement Fund, the cash benefits will be decreased or increased on a pro- rata basis. (*Id.* Ex. ¶ IV.2.a.5-6.)  In addition to the $3,000,000 common fund payment, and wholly separate from the Settlement Fund, Defendants will compensate Class Members for actual identity fraud losses

reasonably traceable to the Data Incident up to $5,000 per individual Class Member on a claims-made basis. (*Id.* Ex. 1 ¶ IV2.b.)   The maximum aggregate amount payable by Defendants to Class Members for all such identity fraud claims will be $600,000.00. Further, as part of the Settlement, Defendants will pay all costs and expenses of Notice and Administration outside of and in addition to the Settlement Fund. (*Id.* Ex. 1 ¶IV.2.c.)

## IV.   ARGUMENT

### D.   Legal Standards

The historical procedure for review of a proposed class action settlement is a well-established two-step process.  Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 11.25, at 38–39 (4th ed. 2002).  The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Id.* (quoting *Manual for Complex Litig.* §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Smith v. Wm. Wrigley Jr. Co*., No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010).  Settlement negotiations involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  *See Manual for Complex Litig.* § 30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

8

Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained below, the process used to reach the Settlement was exceedingly fair and overseen by an experienced neutral. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in this case. Further, the relief provided is significant, especially considering the risks and delay further litigation would entail. Thus, the Settlement is due to be preliminarily approved.

When granting preliminary approval of a proposed settlement, the Court should also determine whether the proposed Class is appropriate for certification. *See Manual for Complex Litig.* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as here) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

A court in this district has stated that "[a] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class

certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)).  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

Finally, it should be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.  *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc*., No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002).  This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).  Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight

to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

### E.      The Court Should Preliminarily Approve the Settlement

Rule 23(e)(1) provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); see also *id*. 2018 Amendment Advisory Committee Notes.  As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

Here, the Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

### 1.     The Class was Adequately Represented

The adequacy inquiry is two-fold.  First, the court must assure itself that the named representatives will adequately and diligently represent the class members' interests and that no potential conflicts in interest will interfere with this representation. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940).  Plaintiffs are members of the Class and do not possess any interests antagonistic to the Class.  Their PII and PHI was provided to Defendants and they allege it was compromised by the Data Breach, as the PII and PHI of the Class was also allegedly compromised.  Indeed, Plaintiffs' claims coincide identically with the claims of the Class, and Plaintiffs and the Class desire the same outcome of this litigation. Because of this, Plaintiffs have prosecuted this case for the benefit of all Class Members.

Second, the court must determine that the class's attorneys will adequately represent the class's interests.  Proposed Settlement Class Counsel are experienced in class action litigation and submitted their and their firms' CVs highlighting their skills and experience in handling data breach class litigation in the request for appointment of the Plaintiffs' leadership structure.  (*See* Blatt Decl. ¶¶ 32-34, [ECF No. 24 Exs. 1-8.)  Because Plaintiffs and their counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2.     The Proposed Settlement was Negotiated at Arm's-Length

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Action, under the supervision of a neutral and experienced mediator.  (Blatt Decl. ¶¶ 10, 27, 32-34; ECF 24, Exs. 1-8.)  These circumstances weigh in favor of approval.  *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318–19; *Manual for Complex Litig.* § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Additionally, the Parties spent significant time negotiating the terms of the final written Settlement Agreement which is now presented to the Court for approval.  At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides.  (Blatt Decl. ¶ 28.)

### 3.     The Proposed Settlement is Fair, Reasonable, and Adequate

#### a)     *The Risks, Costs, and Delay of Continued Litigation*

The relief offered by the Settlement is adequate considering the risks of continued litigation which were made clear by the extensive and well-reasoned opinion issued by the Court that provided guidance to both parties as to the merits of their respective positions. Although Plaintiffs are confident in the merits of their claims, the risks involved in

prosecuting a class action through trial cannot be disregarded.  Plaintiffs' claims would still need to succeed through motion practice, including on a motion for class certification, and likely survive an appeal thereof.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement, "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin*, 391 F.3d at 535; *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"). This is not only a complex case, but it is in an especially risky field of litigation: data breach. *See, e.g., In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").

Data breach cases, such as this one, are especially risky, expensive, and complex. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [in data breach litigation] are

14

cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk.

> *b)*     ***The Method of Distributing Relief is Effective***

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form. (Blatt Decl. Ex. 1, Ex. C, Declaration of Cameron R. Azari ("Azari Decl.") Payments for approved claims will be distributed as soon as practicable after allocation and distribution are determined by the Settlement Administrator following the Effective Date. *(Id.* Ex. 1, ¶ IV.4.d-e.)

> *c)*     ***The Terms Relating to Attorneys' Fees are Reasonable***

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on the Class relief. Plaintiffs will seek attorneys' fees of up to 25% of the Settlement Fund, plus reasonable out-of-pocket costs and litigation expenses incurred, not to exceed $35,000. (*Id.* ¶ 20.) Attorneys' fees, costs, and expenses, in whatever amount set by the Court, are to be paid no later than 14 days after the Effective Date. (*Id.* Ex. 1, ¶ IV.4.c.)

> *d)*     ***The Agreements Required to be Identified by Rule 23(e)(3)***

There are no agreements outside of the Settlement that must be identified by Rule 23(e)(3). (Blatt Decl. ¶ 21.)

4. **The Class Members are Treated Equitably Relative to Each Other**

The last requirement of the Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Class Members are eligible for reimbursement for out-of-pocket losses, including those attendant to identity fraud, time spent following submission of a claim form and an election of either important Identity Monitoring Services and fraud assistance/identity restoration services for three years from the Effective Date or an alternative cash payment. (Blatt Decl. ¶ 22.)

F. **Certification of the Settlement Class is Appropriate**

District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004). And a "class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1313-14 (S.D. Fla. 2005) (quotations omitted). Under the terms of the Agreement, the Parties have agreed, for the purposes of the Settlement only, to the certification of the Class, defined as follows:

> All Persons who were sent a notification from either ECN or HCN as a result of the Data Incident.

(*Id.* Ex. 1, ¶ IV.1.s.)

Certification of the Settlement Class is proper because all Class members have standing for the relief they seek and because the proposed Class, proposed Class representatives, and proposed Class counsel satisfy the numerosity, commonality,

16

typicality, and adequacy of representation requirements of Rule 23(a)(1)-(4) and the superiority and predominance requirements of under Rule 23(b)(3).

### 1. Standing

Under Article III of the U.S. Constitution, "Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citing *Davis v. FEC*, 554 U.S. 724, 733 (2008)). Therefore, "[a] plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 561 (1992)). This requirement applies "even at the settlement stage of a class action," where "[t]o recover individual damages, all plaintiffs within the class definition must have standing." *Drazen v. Pinto*, 41 F.4th 1354, 1360-61 (11th Cir. 2022).

The Court has already addressed named Plaintiffs' Article III standing at length, concluding that they had sufficiently alleged standing. *See* Order on Motion to Dismiss, ECF No. 51 at 5-13. Now, at the settlement stage, the Court must also analyze the standing of absent Class members. While not necessary for a class to be certified, the Court "will have to determine whether each of the absent class members has standing before they could be granted any relief." *Drazen*, 41 F.4th at 1361. As such, "when a class seeks certification for the sole purpose of a damages settlement under Rule 23(e), the class definition must be limited to those individuals who have Article III standing." *Id.*

Here, the Settlement Class is defined as "[a]ll Persons who were sent a notification from either ECN or HCN as a result of the Data Incident." (Blatt Decl. Ex. 1, ¶IV.1.s.) There are an estimated 4.2 million Class Members. (*Id.* ¶ IV.1.t.) With respect to relief,

the Settlement provides the Class Members four types of relief, qualification for each contingent on the injury allegedly suffered: (1) reimbursement for out-of-pocket losses traceable to the Data Breach; (2) reimbursement for lost time due to the Data Breach; (3) compensation for actual identity fraud losses traceable to the Data Breach; and (4) the option of either 36 months of identity monitoring protection, or a cash payment of $50.00. (*Id.* Ex. 1, ¶IV.2.a.1-3.)  Under the terms of the Settlement, reimbursement for out-of-pocket losses, lost time, and actual identity theft are only available to Class Members who establish that they have suffered those injuries, while the identity monitoring or $50.00 cash payment are available to all Class Members.  (*Id.* Ex. 1, ¶IV.2.a.1-3, IV.2.b.)

The Settlement is structured in such a way because there are two "types" of discrete injuries that the Class Members have suffered, and differing ways to remedy such: (1) actual misuse of their PII and PHI (*i.e.*, identity theft and/or fraud); and (2) compromise of their PII and PHI by unauthorized third parties such that they are at a substantial risk of future harm.  Plaintiffs therefore assert that all Class Members have Article III standing because each and every one of them is alleged to have suffered at least one of these two types of injuries.  *See* ECF No. 51 at 6-13 (concluding all named Plaintiffs have standing after analyzing the claims of named Plaintiffs who suffered actual access, but not actual misuse, separately from claims of named Plaintiffs who suffered both).

Plaintiffs assert this is so because, according to Defendants' Data Breach Notification Letter sent to the Maine Attorney General, "written notice of [the Data Breach]" was provided "to all ***affected*** individuals" (*i.e.*, those whose PII and PHI were in the data platform subject to the Data Incident).  ECF No. 38-1 at 2 (emphasis added).  As

such, Plaintiffs alleged that each and every person who received the notice were "affected" and at the very least had their PII and PHI accessed by unauthorized third parties in the Data Incident.  [*See* ECF No. 51 at 7 (quoting *Tsao v. Captiva MVP Restaurant Partners*, 986 F.3d 1332, 1339 (11th Cir. 2021)).]  Combined with the fact that some individuals affected by the Data Incident have been the victim of identity theft and/or fraud [*see, e.g.,* ECF No. 52 at ¶¶ 30-36, 54-62, 70-74], Plaintiffs argue these allegations are sufficient to establish Article III standing for all Class Members for purposes of settlement given a substantial risk of future harm, rather than a speculative or remote risk.  [*See* ECF No. 51 at 9 ("courts have found that evidence of misuse of certain individuals' data affected by the same data breach can help establish a 'substantial risk' of future harm for those plaintiffs who have not yet been [victims of actual misuse]") (citing *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 301 (2d Cir. 2021); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 n.7 (9th Cir. 2018))].

Finally, the Settlement provides the proper relief to each Class Member based on their alleged injuries.  The Court previously held that the standing analysis applies to "each request for relief."  [*Id.* at 8.]  Here, these requirements are easily met, since the "reimbursement for out-of-pocket losses reasonably traceable to the Data Incident," "reimbursement for … lost time resulting from the Data Incident," and compensation for "actual identity fraud losses reasonably traceable to the Data Incident" all require documentation and/or attestation from the Class Member to establish qualification for such relief, and the identity monitoring protection and cash payment option are available to every Class Member – regardless of whether they have suffered from identity theft – based

19

upon the fact that they have all nevertheless indisputably suffered from actual access of their PII and PHI by unauthorized third parties as discussed above.

## 2. The Settlement Class Satisfies Rule 23(a)

The requirements of Rule 23(a) are well known: numerosity, commonality, typicality, and adequacy. *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

### a) Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Although "[p]arties seeking class certification do not need to know the precise number of class members," "they must make reasonable estimates with support as to the size of the proposed class." *Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015); *see also Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'"). To satisfy the numerosity requirement in the Eleventh Circuit, generally "more than forty [class members is] adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Defendants have identified approximately 4.2 million people affected by the Data Incident. (Blatt Decl. Ex. 1, ¶IV.1.t.) Numerosity is thus easily satisfied.

### b) Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." For this requirement, "even a single common question will do.'" *Carriuolo v. Gen. Motors*

*Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  The common question "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (quoting *Dukes*, 564 U.S. 338). The commonality requirement is a "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 ("The threshold for commonality under Rule 23(a)(2) is not high.").

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied because class members are joined by the common questions of law and fact that arise from the same event—the Data Incident.  As alleged by Plaintiffs, the critical issues posed by this action include:

- Did Defendants fail to implement and maintain adequate and reasonable systems and security procedures and practices to protect Plaintiffs' and Class Members' PII and PHI?

- Did Defendants owe a duty to Plaintiffs and Class Members to adequately protect their PII and PHI and to provide timely and accurate notice of the Data Incident?

- Did Defendants breach their duties to protect the PII and PHI of Plaintiffs and Class Members by failing to provide adequate data security and by failing to provide appropriate and adequate notice of the Data Incident?

- Was Defendants' conduct negligent?

- Did Defendants know, or should they have known, that their computer systems were vulnerable to being compromised?

21

- Did Defendants' conduct, including their failure to act, result in the Data Incident of their systems, resulting in the loss of Plaintiffs' and Class Members' PII and PHI?  Was it the proximate cause of the Data Incident?

- Did Defendants wrongfully or unlawfully fail to inform Plaintiffs and Class Members that they did not maintain computers and security practices adequate to reasonably safeguard Plaintiffs' and Class Members' PII and PHI?

[*See* ECF No. 52 SAC ¶¶ 125, 182.]  These common issues aggregate toward the singular conduct of Defendants with respect to the Data Incident.

### c)    *Typicality*

Typicality under Fed. R. Civ. P. 23(a)(3) "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003).  Typicality is satisfied when the claims or defenses of the class "arise from the same event or pattern or practice and are based on the same legal theory." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009).  So to be typical, a class representative must have "the same interest and suffer the same injury as the class members." *Id.*  But "[n]either the typicality nor the commonality requirement mandates that all putative class members share identical claims, and factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (internal quotations omitted).  Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement.  Specifically, Plaintiffs' claims are typical of those of the putative class because they arise from the same Data Incident and from the same legal duty Defendants had to secure the PII and PHI of Plaintiffs and the Settlement Class, comprising a clear nexus between Plaintiffs' claims and those of the Class Members. *Hines*, 334 F.3d at 1256.

Typicality is thus satisfied.

### d) Adequacy

Rule 23(a)(4) requires that Plaintiffs "fairly and adequately protect the interests of the class."  It "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008); *Amchem*, 521 U.S. at 625-26.  Both inquiries are satisfied here.

As noted above, the proposed Settlement Class Representatives are members of the Class and do not possess any interests antagonistic to the Class.  (Blatt Decl., ¶ 14.)  Rather, adequacy is easily satisfied here because Named Plaintiffs and "class members all had their personal information compromised in the same data breach" and "seek redress for similar injuries."  *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1276 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022).  Plaintiffs and Class Members all had their PII and PHI in ECN's possession and, as alleged, were harmed because of the Data Incident affecting ECN's data platform.  Their interests are directly aligned, as evidenced

by the fact that Named Plaintiffs have vigorously prosecuted this case for the benefit of all Class Members by filing the underlying actions, reviewing pleadings, conferring with Counsel, and providing input in crafting and approving the Settlement.  (Blatt Decl., ¶ 24.)

In addition, Class Counsel are qualified to represent the Settlement Class.  As reflected in the Court's prior appointment, they have extensive experience in prosecuting data breach cases, having represented data breach victims in numerous cases across the country.  (*Id.* ¶¶ 32-34, ECF 24, Exs. 1-8.)  In this case, they have spent considerable time investigating class members' injuries and claims, researching legal claims and remedies, drafting Complaints, opposing defendants' dispositive motions, and negotiating a well-informed Settlement on behalf of the Class.

Accordingly, all the Rule 23(a) prerequisites, including adequacy, have been met.

### 3.    The Settlement Class Satisfies Rule 23(b)(3)

"In addition to meeting the[] four requirements [of Rule 23(a)], a class action must also satisfy one of the three parts of Rule 23(b)."  *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021) (citing Fed. R. Civ. P. 23(b); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009)).  Here, Plaintiffs are moving for preliminary certification pursuant to Rule 23(b)(3), which "requires that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy.'"  *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).  Predominance and superiority are satisfied.

*a)*      *Predominance*

The first portion of the Rule 23(b)(3) inquiry asks whether "questions of law or fact common to class members predominate over any questions affecting only individual class members." Fed. R. Civ. P. 23(b)(3). "That common questions of law or fact predominate over individualized questions means that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)).

Here, Plaintiffs argue common questions of law or fact predominate over the individualized questions. "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Vega*, 564 F.3d at 1270 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)). The resolution of the class-wide issues will be essentially dispositive of the issues in this case, and it would only leave a determination of damages to be made.

The Settlement would resolve the key, common factual and legal questions raised in the Second Amended Consolidated Class Action Complaint, such as "whether Defendants failed to implement and maintain adequate and reasonable systems and security procedures and practices to protect Plaintiffs' and Class Members' PII and PHI," "whether Defendants knew or should have known that their computer systems were vulnerable to being compromised," and "whether Defendants' conduct, including their failure to act,

resulted in or was the proximate cause of the Data Breach of their systems, resulting in the loss of Plaintiffs' and the Class Members' PII and PHI" [ECF No. 52 ¶ 182], leaving only the Class Members' showing of entitlement to the reimbursement categories for the claims process.  Further proof of predominance is the fact that proving Defendants' liability at trial would require extensive discovery, complex evidence regarding technology and computer systems, and likely would require expert testimony on one or more of these issues, while the individualized issues can be proven with easily accessible documentation, and attestations from the Class Members.

The Settlement Class should be certified because these factual and legal questions far outweigh the individualized questions surrounding amount and entitlement to damages, and in fact, the Settlement is designed to address these individualized questions in the claims process, a far more efficient solution than 4.2 million trials on damages, as further discussed below.

### b) *Superiority*

The second portion of the Rule 23(b)(3) inquiry asks if "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The factors to be considered in determining the superiority of proceeding as a class action include: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of

concentrating the litigation in a particular forum; and when certified for trial, (4) the difficulties likely to be encountered in management[2] of the class action. *Id.*

The first three factors favor certification here. Superiority is met when class resolution will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Here, there are approximately 4.2 million Class Members (Blatt Decl. Ex. 1, ¶ IV.1.t), and a Settlement that provides for up to 100% reimbursement of out-of-pocket losses, reimbursement for lost time, compensation for actual losses due to identity theft or fraud, identity protection monitoring, and cash payments to those affected, is a highly efficient outcome in light of the alternative of 4.2 million trials seeking materially identical relief. Moreover, proceeding with the Settlement ensures that the largest number of Class Members eligible to participate in the Settlement will receive notice and an opportunity to file a claim. As such, the Settlement Class should be certified.

G.   **The Proposed Class Notice Satisfies Rule 23**

1.   **The Settlement Provides the Best Class Notice Practicable**

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Likewise, in

---

[2]   Here, the Court "need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) – the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The proposed Class Notices, Short and Long Forms (Blatt Decl. Ex. 1 (Exhibit C to the SA) readily meet these requirements, and the notice program constitutes the best practicable notice under the circumstances of this case (Azari Decl.).  To provide notice and make available the benefits of this Settlement to the intended beneficiaries, Defendant is required by the Settlement to send the Settlement Administrator a Class List of individuals who were sent one or more notices of the Data Incident, including each Settlement Class Member's most current mailing address and email address(es), to the extent that information is available.  Moreover, the Defendants, Class Counsel, and the Settlement Administrator will work together in good faith to update, de-duplicate and otherwise check available records to arrive at a final Class List that is as accurate as reasonably possible.

### 2. The Notice Provides a Clear Explanation to Class Members of Their Opportunity to Opt Out of the Settlement and Weigh the Benefits of the Settlement

Moreover, the Notice uses "plain English" to inform class members of, among other things, the nature of the class claims, the essential terms of the settlement, the date, time and place of the Final Approval Hearing, how to object or opt-out of the settlement, and the binding effect of the settlement on Class members.  The Notice also contains information regarding Counsel's request for fees and expenses, along with the URL of the

Settlement website where the fee brief and other important case documents will be able to be accessed.  Thus, the notice satisfies the specific requirements of Federal Rule of Civil Procedure 23(c)(2)(B), which, in relevant part, provides that the notice shall apprise class members that "the court will exclude from the class any member who requests exclusion [and] the time and manner for requesting exclusion."

So, the proposed Notice sufficiently informs class members of the terms of the proposed settlement and their available options, in both English and Spanish. The Notice is the best notice that is practicable under the circumstances and will be paid for entirely by the Defendants outside of the allotted Settlement Fund.

## V.   <u>CONCLUSION</u>

The Settlement provides substantial benefits to the Class and is the result of extensive arm's length negotiations among the parties.  The Notice program provides the best practical notice to all members of the Class.  The Claim Form is designed to allow Class Members to claim the benefits to which they are entitled to, and there are resources available for Class Members to obtain assistance or additional information should they need support or assistance in making their claims.

The proposed class representatives and proposed Class Counsel are free of conflict and have proceeded in this matter with the Class' best interests in mind.  The Settlement is fair, reasonable and adequate, and for all of these and the other reasons set forth in the

instant motion, the Court should grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted,

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
*/s/ Francesca Kester*
Francesca Kester s Florida Bar No. 1021991
201 N. Franklin Street, 7th Floor
Tampa, FL 33692
Phone:  (813) 2235505
fkester@forthepeople.com

*Counsel for Plaintiffs*

**CASEY GERRY SCHENK**
**FRANCAVILLA**
**BLATT & PENFIELD, LLP**
Gayle M. Blatt (*Pro hac vice*)
110 Laurel Street
San Diego, CA  92101
Telephone: 619/238-1811
gmb@cglaw.com

*Interim Co-Lead  Counsel for Plaintiffs and the Class*

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner (*Pro hac vice*)
100 Washington Avenue South, Suite 1700
Minneapolis, MN  55401
Telephone:  612/339-7300
612/336-2940 (fax)
bbleichner@chestnutcambronne.com

*Interim Co-Lead Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jenni Cabezas*
Jenni Cabezas