UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CIV-61275-RAR

**WENSTON DESUE**, *individually and*
*as legal guardian of N.D. and M.D.*
*and all others similarly situated*,

    Plaintiff,

v.

**20/20 EYE CARE NETWORK, INC.**, *et al.*,

    Defendants.
_____/

### ORDER CERTIFYING SETTLEMENT CLASS AND GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PROGRAM

**THIS CAUSE** comes before the Court on the Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support [ECF No. 81] ("Motion") filed on October 28, 2022. A settlement agreement, dated October 28, 2022 ("Settlement Agreement"), was made and entered into by and among the following Settling Parties: (i) Stephany Alcala; Benjamin J. Liang; Amber Lowe, on behalf of herself and her minor children C.B., K.B., M.B., and G.M.; David Runkle; and Suzanne Johnson (collectively the "Representative Plaintiffs"), individually and on behalf of the Class Members, by and through their attorneys, Gayle M. Blatt of the law firm Casey Gerry Schenk Francavilla Blatt & Penfield LLP; Bryan Bleichner of the law firm Chestnut Cambronne PA; Dorothy P. Antullis of the law firm Robbins Geller Rudman & Dowd LLP; Jean S. Martin of the law firm Morgan & Morgan, P.A.; Terence R. Coates of Markovits, Stock and DeMarco, LLC; Joseph M. Lyon of the Lyon Firm; Nathan D. Prosser of Hellmuth & Johnson PLLC; and M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp. (collectively, "Proposed Class Counsel" or "Class Counsel");

and (ii) 20/20 Eye Care Network, Inc. ("ECN") and iCare Acquisition, Inc. ("iCare") (collectively "20/20" or the "Defendants"), for the benefit of all Released Parties, by and through the Defendants' counsel of record, Mark S. Melodia and Caitlin Saladrigas of Holland & Knight LLP ("Defense Counsel").

Representative Plaintiffs move for Preliminary Approval of the Settlement Agreement, attached as Exhibit 1 to the Motion, which will resolve all claims against Defendants ECN and iCare in this lawsuit. The Court conducted a hearing on November 30, 2022, and finds that preliminary approval is warranted as set forth herein.

## BACKGROUND

Following a Data Incident that Defendants discovered on or about January 11, 2021, six putative class actions were filed in the United States District Court for the Southern District of Florida. These lawsuits include the above-captioned matter, *Desue v. 20/20 Eye Care Network, Inc.* No. 21-cv-61275, and the following: *Bowen v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61292; *Fraguada v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61302; *Runkle v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61357; *Hoffman-Mock v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61406; and *Johnson v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61755. All six matters were consolidated under the *Desue* caption by Court order. Order Consolidating Cases and Setting Status Conf., June 28, 2021, [ECF No. 11]; *see also* [ECF Nos. 22, 35].

On September 1, 2022, Plaintiffs filed their First Amended Consolidated Class Action Complaint, alleging four causes of action: (1) negligence and negligence *per se*; (2) unjust enrichment; (3) breach of confidence; and (4) violation of the Florida Deceptive Trade Practices Act (FDUTPA). [ECF No. 37]. Plaintiffs asserted these claims on behalf of a putative Nationwide Class, or alternatively, as to violation of the FDUTPA, on behalf of a putative Florida Subclass.

Plaintiffs also sought an award of actual or statutory damages as well as attorneys' fees and costs. *Id.*

Defendants filed a Motion to Dismiss the First Amended Consolidated Complaint, which the Court granted in part on March 15, 2022. [ECF No. 51]. In the Order on Defendants' Motion to Dismiss, the Court held that Plaintiffs had established Article III standing. Two Plaintiffs had established injuries-in-fact based upon substantial risk of imminent identity, financial, and health fraud and theft; emotional anguish and distress resulting from the Data Incident; and increased time spent reviewing financial statement and credit reports to assess whether fraudulent activity occurred, *id.* at 6, while the remaining Plaintiffs did so based upon alleged actual misuse of their personal information, *id.* at 9-10. The Court also ruled that Plaintiffs adequately pleaded traceability. *Id.* at 11-12.

However, the Court dismissed without prejudice under Fed. R. Civ. P. 12(b)(6) the four specific causes of action pleaded in Plaintiffs' First Amended Consolidated Complaint [ECF No. 51]. The Court dismissed the negligence count because it comingled multiple negligence theories into a single count and did not identify which Defendant was allegedly responsible for various acts or omissions. *Id.* at 13-15. The Court next dismissed the unjust enrichment count, concluding that Florida law does not recognize indirect conferral of benefits through a third-party intermediary. *Id.* at 15-17. The Court held the breach of confidence claim failed because Plaintiffs failed to allege Defendants disclosed their personal identifying information ("PII") and personal health information ("PHI") and because no confidential relationship existed between the Parties. *Id.* at 17-19. Finally, while the Court dismissed the FDUTPA claim because Plaintiffs failed to plead cognizable actual damages, it nevertheless concluded Plaintiffs had standing to assert injunctive relief under the statute. *Id.* at 19-21.

Plaintiffs filed a Second Amended Consolidated Class Action Complaint ("SAC") on March 29, 2022. [ECF No. 52]. There, Plaintiffs asserted non-commingled negligence counts, specifically, negligence against ECN and negligence against iCare, negligent supervision by ECN of its employees entrusted with access to the PII and PHI of Plaintiffs and putative Class Members, and a count under FDUTPA. On April 25, 2022, following a joint motion by the Parties to extend the briefing dates for pleading challenges, Defendants filed a Motion to Strike Punitive Damages and Special Relationship Allegations [ECF No. 59], and on April 26, 2022, Defendants moved to dismiss the SAC. [ECF No. 60].

In response, Plaintiffs filed an Unopposed Motion for Leave to File Third Amended Consolidated Class Action Complaint ("TAC") to refine factual allegations, amend certain legal claims, and address concerns raised by Defendants in their motions. [ECF No. 62]. On May 9, 2022, the Court granted the unopposed motion to file a new amended complaint. Thereafter, and prior to the filing of the TAC, the Parties filed a Joint Motion to Stay Proceedings to provide them time to engage in settlement efforts. [ECF No. 65].[1]

After actively litigating this lawsuit for more than a year, the Parties agreed to mediate this matter before the Honorable John Thornton (Ret.), an experienced mediator with experience in Florida and Eleventh Circuit case law. In accordance with a motion by the Parties [ECF No. 65], the Court on July 11, 2022, ordered that mediation occur on July 25, 2022. [ECF No. 68]. The Parties mediated on that date via Zoom Video Conference. The arm's-length negotiations were hard fought with considerable exchange of information between the Parties and Judge Thornton. The Parties were unable to reach settlement that day. Settlement negotiations continued, and the Parties continued to make progress toward settlement over the ensuing weeks. On August 1, 2022,

---

[1] The SAC thus remains the operative complaint in this action.

the Court granted the Parties' Joint Motion for Extension of the Stay of Proceedings and for Extension of Deadline to File Mediator's Report. [ECF Nos. 69-70]. The Parties advised the Court on August 15, 2022, that they hoped to reach a settlement in principle within days, with Judge Thornton's continued oversight. Joint Rpt. re: Mediation, [ECF No. 71]. Following ongoing and extensive negotiations, on August 26, 2022, the Parties advised the Court they had reached a mediated negotiated settlement. Joint Status Rpt. re: Settlement, [ECF No. 75].

That Settlement, which is before the Court on Plaintiffs' Motion, provides for the Defendants to pay $3,000,000 into a non-reversionary common fund. The benefits available to the Class Members to be paid from the Settlement Fund are as follows:

> a) Class Members will be able to submit a claim for reimbursement for out-of-pocket losses reasonably traceable to the Data Incident of up to $2,500 per individual Class Member. To claim this benefit, Class Members will be required to provide documentation, and declare under penalty of perjury their belief that the claimed losses are due to the Data Incident.
>
> b) Class Members will also have the option to elect either thirty-six (36) months of identity monitoring protection or, in the alternative, a cash payment of $50.00 per person.
>
> c) Class Members will have the right to make a claim for reimbursement for time spent of up to ten (10) hours at $25 per hour upon attestation. Class Members will affirm they have lost time resulting from the Data Incident and provide a brief description of the time spent.
>
> d) The Settlement Fund will also cover Class Counsel's Attorneys' Fees and Litigation Expenses (as awarded by the Court).

To the extent the total amount of the Approved Claims at the end of the Claims Period exceeds or is less than the amount in the Settlement Fund, the cash benefits will be decreased or increased on a pro-rata basis. In addition to the $3,000,000 common fund payment, and wholly separate from the Settlement Fund, Defendants will compensate Class Members for actual identity fraud losses that are reasonably traceable to the Data Incident, up to $5,000 per individual Class Member on a claims-made basis. *Id.* Ex. 1 ¶ IV2.b. The maximum aggregate amount payable by Defendants to Class Members for all such identity fraud claims will be $600,000.00. Further, as part of the Settlement, Defendants will pay all costs and expenses of Notice and Administration outside of and in addition to the Settlement Fund. *Id.* Ex. 1 ¶ IV.2.c.

The Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. will create a settlement website where Class Members can review the long form notice, file a claim, download or request to be sent a paper claim, review settlement related documents, including the Settlement Agreement, the motion for preliminary approval, the motion for attorneys' fees and expenses ("Fee Application"), and the final approval motion, when filed. The settlement website will also contain answers to frequently asked questions. Class Members will have access to the Settlement Administrator's mailing and email address and a telephone number that can be called for questions. The Settlement Administrator will process claims, calculate what is owed to each Class Member based on the terms of the Settlement Agreement, and distribute the settlement benefits in accordance with the settlement terms and with this Order.

Upon considering the Motion, the Settlement and all exhibits thereto, the record in these proceedings, the representations and recommendations of counsel, and the requirements of law, the Court finds that: (1) this Court has jurisdiction over the subject matter and the Parties to this Action; (2) the proposed Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 and should be certified for settlement purposes only; (3) the persons and entities

identified below should be appointed Class Representatives and Class Counsel; (4) the Settlement is the result of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel, and is not the result of collusion; (5) the Settlement is within the range of reasonableness and should be preliminarily approved; (6) Epiq Class Action & Claims Solutions, Inc. is a qualified Settlement Administrator and should be appointed to serve in that capacity; (7) the proposed Notice program and proposed forms of Notice satisfy Federal Rule of Civil Procedure 23 and Constitutional due process requirements, and are reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, Class Counsel's Fee Application, and their rights to opt-out of the Settlement Class or object to the Settlement and/or Class Counsel's Fee Application; (8) good cause exists to schedule and conduct a Final Approval Hearing, pursuant to Federal Rule of Civil Procedure 23(e), to assist the Court in determining whether to grant Final Approval of the Settlement and enter the Final Approval Order, and whether to grant Class Counsel's Fee Application; and (9) the other related matters pertinent to the Preliminary Approval of the Settlement should also be approved.   Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. As used in this Preliminary Approval Order, unless otherwise noted, capitalized terms shall have the definitions and meanings accorded to them in the Settlement.

2. The Court has jurisdiction over the subject matter and Parties to this proceeding pursuant to 28 U.S.C. § 1332, including jurisdiction to approve and enforce the Settlement and all Orders that have been entered or which may be entered pursuant thereto.  The Court also finds that it has personal jurisdiction over the Parties.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

***Provisional Class Certification and Appointment of***
***Class Representatives and Class Counsel***

4.	It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id.* In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *Id.*; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

5.	The Court finds, for settlement purposes, that the Federal Rule of Civil Procedure 23 factors are present, and that certification of the proposed Settlement Class is appropriate under Rule 23. The Court therefore provisionally certifies the following Settlement Class:

> All Persons who were sent a notification from either ECN or HCN as a result of the Data Incident.

6.	Specifically, the Court finds, for settlement purposes only and conditioned on final certification of the proposed class and on the entry of the Final Approval Order, that the Settlement Class satisfies the following factors under Rule 23(a) and (b):

<u>Numerosity</u>: The numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class consists of more than four million people who were sent notification of the Data Incident. *See* Fed. R. Civ. P. 23(a)(1); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied where there are more than 40 class members).

Commonality: The commonality requirement of Rule 23(a)(2) is satisfied. "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal citations omitted). The commonality requirement is a "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Here, there are multiple questions of law and fact—centering on the appropriateness of Defendants' cyber security structure, policies, and procedures; whether Defendants breached a duty to the Class Members to keep their confidential information outside of the reach of unauthorized actors; whether Defendants' actions or omissions in relation to the Data Incident were the proximate cause of injury to Class Members; whether Defendants provided timely notice of the Data Incident; and whether Representative Plaintiffs and the Class are entitled to damages and the amount of such damages. These issues are common to the Settlement Class, are alleged to have injured all Settlement Class Members in the same way, and would generate common answers central to the viability of all claims were the Action to proceed to trial.

Typicality: Plaintiffs' claims are reasonably coextensive with those of the absent Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Typicality under Fed. R. Civ. P. 23(a)(3) "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). To be typical, a class representative must have "the same interest and suffer the same injury as the class members." *Id.* But "[n]either the typicality nor the commonality

requirement mandates that all putative class members share identical claims, and factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (internal quotations omitted). When the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983). Here, the typicality requirement is satisfied for the same reasons that Representative Plaintiffs' claims meet the commonality requirement. Specifically, Representative Plaintiffs' claims are typical of those of the putative class because they arise from the same Data Incident and from the same legal duty Defendants had to secure the PII and PHI of Representative Plaintiffs and the Settlement Class, comprising a clear nexus between Representative Plaintiffs' claims and those of the Class Members. *See Hines*, 334 F.3d at 1256.

<u>Adequacy</u>: Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp's Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Representative Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Class, because they have the same interest in the relief afforded by the Settlement as the absent Class Members, and the absent Class Members have no diverging interests. Further, Representative Plaintiffs and the Class are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions.

Predominance and Superiority: Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. SAC at ¶¶ 1, 5-9, 13, 182, 189. Other key, common factual and legal questions predominate in this matter, including whether Defendants' data systems and security policies and practices were adequate and reasonable; the extent of Defendants' knowledge regarding any potential vulnerabilities in its data systems; and whether Plaintiffs and the Class Members suffered losses because of Defendants' actions. See id. The Settlement Class should be certified because these factual and legal questions far outweigh the individualized questions surrounding amount and entitlement to damages, and in fact, the Settlement is designed to address these individualized questions in the claims process. Further, in this case, resolution of the many claims among Class Members in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. See Fed. R. Civ. P. 23(b)(3).

6. The Court finds that all Class Members have standing to receive the relief contained in the Agreement. See Drazen v. Pinto, 41 F.4th 1354, 1360-61 (11th Cir. 2022). The Agreement is structured in such a way because there are two "types" of discreet injuries that the Class Members have suffered, and differing ways to remedy such: (1) actual misuse of their PII and PHI (i.e., identity theft and/or fraud); and (2) actual access of their PII and PHI by unauthorized third parties such that they are at a substantial risk of future harm. All Class Members have standing because each and every one of them is alleged to have suffered at least one of these two types of injuries, and the Settlement provides the proper relief to each Class Member based on their alleged injuries. See [ECF No. 51] at 6-13 (concluding all named Plaintiffs have standing after analyzing

the claims of named Plaintiffs who suffered actual access, but not actual misuse, separately from claims of named Plaintiffs who suffered both).

7.   The Court appoints Representative Plaintiffs Stephany Alcala, Benjamin J. Liang, Amber Lowe, David Runkle, and Suzanne Johnson as Class Representatives.

8.   The Court appoints Gayle M. Blatt of the law firm Casey Gerry Schenk Francavilla Blatt & Penfield LLP and Bryan Bleichner of the law firm Chestnut Cambronne PA as lead Class Counsel; and Dorothy P. Antullis of the law firm Robbins Geller Rudman & Dowd LLP; Jean S. Martin of the law firm Morgan & Morgan, P.A.; Terence R. Coates of Markovits, Stock and DeMarco, LLC; Joseph M. Lyon of the Lyon Firm; Nathan D. Prosser of Hellmuth & Johnson PLLC; and M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp. as Class Counsel.

9.   The Court recognizes that Defendants reserve all defenses and objections against and rights to oppose any request for class certification in the event that the proposed Settlement does not become final for any reason.  Defendants also reserve defenses to the merits of the claims asserted in the event the Settlement does not become final for any reason.

### *Preliminary Approval of the Settlement*

10.   At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness." 4 *Newberg on Class Actions* § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-CV-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Compl. Lit.*, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery.") (internal quotation marks omitted).  The Court preliminarily approves the Settlement, together with all exhibits thereto, as fair, reasonable, and adequate.   The Court finds that the Settlement was reached in the absence of collusion and is the product of informed good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel.  The Court further finds that the Settlement, including the exhibits thereto, is within the range of reasonableness and possible judicial approval, such that: (a) presumption of fairness is appropriate for purposes of preliminary settlement approval; and (b) it is appropriate to effectuate notice to the Settlement Class, as set forth below and in the Settlement, and schedule a Final Approval Hearing to assist the Court in determining whether to grant Final Approval to the Settlement and enter a Final Approval Order.

### *Appointment of the Claims Administrator and Approval of the Class Notice and Claims Process*

11.     "Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted).   The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action."   *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also Manual for Compl. Lit*., § 21.312 (listing relevant information).

12. The Court approves the form and content of the class Notices, substantially in the forms attached to the Settlement, as well as the Claim Form attached thereto. The Notice program is designed to provide the best notice practicable, and by direct mail to each of the Class Members. The Notice program provides notice in substantially the same manner as notice was provided regarding the Data Incident. The Court further finds that the Notice program described in the Settlement is the best practicable under the circumstances. The class Notice program is reasonably calculated under the circumstances to inform the Class of the pendency of the Action, certification of the Class for settlement purposes, the terms of the Settlement, Class Counsel's attorney's fees application, and their rights to opt-out of the Settlement Class or object to the Settlement. The class Notices and Notice program constitute sufficient notice to all persons entitled to notice. The class Notices and Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of due process.

13. Epiq Class Action & Claims Solutions, Inc. shall serve as the Settlement Administrator.

14. The Administrator shall implement the class Notice program, as set forth below and in the Settlement, using the Notices substantially in the forms attached to the Settlement and approved by this Preliminary Approval Order. Notice shall be provided to the members of the Class pursuant to the Notice program, as specified in the Settlement and approved by this Preliminary Approval Order. The Notice program shall include, to the extent necessary, the summary Notice, and the posting of the Long-Form Notice on the Settlement Website, as set forth in the Settlement and below.

*Settlement Notice*

15. The Administrator shall administer the settlement Notice as set forth in the Settlement.

16. The Settlement Administrator will provide mailed Notice by USPS to all Class Members. The Settlement Administrator will obtain mailing addresses for members of the Class and shall also re-mail the mailed Notice once for any returned Notices. The content of the mailed Notice includes, among other things, a summary of the settlement fund and benefits of the settlement for which Class Members may file a Claim, notice of the right to opt out or object to the settlement, the date of the Final Approval Hearing, and directs the Class Members to the Settlement Website to view the more detailed Long Form Notice and file online Claims or to request a paper Claim Form.

17. Notice shall be sent to all Class Members within sixty (60) days following the entry of this Preliminary Approval Order.

*Settlement Website*

18. Prior to the Notice Deadline, the Administrator shall establish a Settlement Website as a means for Class Members to obtain notice of, and information about, the Settlement. The Settlement Website shall include an online portal to file claims, hyperlinks to the Settlement, the Long-Form Settlement Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for Defendants agree to include. These documents shall remain on the Settlement Website until at least sixty (60) days following the Claim Deadline.

19. The Administrator is directed to perform all substantive responsibilities with respect to effectuating the Notice program, as set forth in the Settlement.

20. The Administrator shall prepare and send all notices required by the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq*.

### *Final Approval Hearing, Opt-Out, and Objections*

21. A Final Approval Hearing shall be held before this Court on **June 22, 2023, at 10:00 A.M.** to determine whether to grant Final Approval to the Settlement and to enter a Final Approval Order, and whether Class Counsel's Fee Application should be granted.

22. Any person within the Class who wishes to be excluded from the Class may exercise their right to opt-out of the Class by following the opt-out procedures set forth in the Long Form Notice at any time during the Opt-Out Period. To be valid and timely, opt-out requests must be completed in accordance with the Settlement and Notice, verified, and postmarked **on or before the last day of the Opt-out Period** ("Opt-Out Deadline"). Opt-out requests must be received by the Opt-Out Deadline at the address indicated in the Long-Form Settlement Notice.

23. Any Class Member may object to the Settlement or Class Counsel's Fee Application. Any such objections must be received by the Settlement Administrator at the address indicated in the Summary and Long-Form Settlement Notices. The Parties may seek leave from the Court to depose objectors prior to the Final Approval Hearing. For an objection to be considered by the Court, the objection must be addressed to the Settlement Administrator and postmarked no later than the Objection Deadline of **April 3, 2023**. To be valid, an objection must be in writing and include the following information:

   a) The case name and number *Wenston Desue, et al. v. 20/20 Eye Care Network, Inc., et al.*, United States District Court, Southern District of Florida, No. 0:21-cv-61275-RAR;

   b) The full name, address, telephone number, and email address of the person objecting;

   c) The full name, address, telephone number, and email address of the objector's counsel (if the objector is represented by counsel);

    d) A statement as to whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class, and also state with specificity the grounds for the objection;

    e) Confirmation of whether the objector or counsel on the objector's behalf will personally appear and/or testify at the Final Approval Hearing; and

    f) The objector's signature and the signature of the objector's duly authorized counsel or other duly authorized representative.

***Further Filings in Support of Settlement and Attorneys' Fees Application***

24. No later than fourteen (14) days prior to the Objection Deadline, Representative Plaintiffs and Class Counsel shall file their Application for an Award of Attorneys' Fees and Expenses and proposed orders.

25. No later than fourteen (14) days prior to the Final Approval Hearing, Representative Plaintiffs and Class Counsel shall file their Motion for Final Approval of the Settlement and proposed orders.

26. No later than seven (7) days prior to the Final Approval Hearing, Representative Plaintiffs and Class Counsel shall file their responses to timely filed Objections to the Settlement.

***Effect of Failure to Approve Settlement***

27. If the Settlement is not finally approved by the Court, if for any reason the Parties fail to obtain a Final Approval Order as contemplated in the Settlement, or if the Settlement is terminated pursuant to its terms for any reason, then the following shall apply:

    a) All orders and findings entered in connection with the Settlement shall become null and void and have no further force and effect, shall not be used or referred to for any purpose whatsoever, and shall not be admissible or discoverable in any other proceeding;

b) Nothing in this Preliminary Approval Order is, or may be construed as, any admission or concession by or against Defendants or Representative Plaintiffs on any point of fact or law; and

c) Neither the Settlement terms, any documents exchanged or disclosed by the Parties to each other for settlement purposes, nor any publicly disseminated information regarding the Settlement, including, without limitation, the Notice, court filings, orders, and public statements, may be used as evidence or otherwise referenced or referred to in any future proceeding. In addition, neither the fact of, nor any documents relating to, any Party's withdrawal from the Settlement, any failure of the Court to approve the Settlement, and/or any objections or interventions, may be used as evidence.

### *Stay/Bar of Other Proceedings*

28. Pursuant to 28 U.S.C. § 1651, Federal Rule of Civil Procedure 23 and the Settlement Agreement, the Court hereby stays proceedings in the Action until further order of the Court, except as may be necessary to implement the terms of the Settlement. Pending final determination of whether the Settlement should be approved, Representative Plaintiffs, all persons in the Class, and persons purporting to act on their behalf (including any attorneys) are enjoined from threatening, commencing, or prosecuting (either directly, representatively, or in any other capacity) against any of the Released Parties any action or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims.

Based on the foregoing, the Court sets the following schedule for the Final Approval Hearing and the actions which must take place before and after it:

| **Event** | **Deadline** |
|---|---|
| Notice Deadline | January 31, 2023 |
| Motion for Attorney's Fees and Expenses | March 17, 2023 |
| Objection and Opt Out Deadline | April 3, 2023 |
| Claim Deadline | May 1, 2023 |
| Motion for Final Approval | May 16, 2023 |
| Final Approval Hearing | June 22, 2023 |

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 5th day of December, 2022.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**