**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-CV-61275-RAR

WENSTON DESUE, *individually and*
*as legal guardian of N.D. and M.D. and*
*all others similarly situated,*

       Plaintiffs,

v.

20/20 EYE CARE NETWORK, INC., *et al.,*

       Defendants,

AND ALL CONSOLIDATED ACTIONS

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   CASE SUMMARY ............................................................................................. 2

III.  SETTLEMENT TERMS ..................................................................................... 4

    A.   The Settlement Class ............................................................................... 4

    B.   The Settlement Benefits .......................................................................... 4

        1.   Reimbursement for Lost Time ..................................................... 4

        2.   Identity Monitoring or Alternative Cash Payments ..................... 5

        3.   Reimbursement of Out-of-Pocket Losses .................................... 5

        4.   Identity Restoration Services ....................................................... 5

        5.   Reimbursement of Out-of-Pocket Losses for Actual Fraud ......... 6

    C.   Notice and Administration Costs and Expenses ...................................... 6

    D.   Attorneys' Fees, Costs, and Expenses ..................................................... 6

    E.   Release of Claims .................................................................................... 6

IV.   CLASS NOTICE AND CLAIMS ....................................................................... 7

V.    ARGUMENT ...................................................................................................... 8

    A.   Class Certification for Settlement ............................................................ 8

    B.   The Settlement is Fair, Reasonable, and Adequate ................................ 10

        1.   The Class was Adequately Represented ..................................... 10

        2.   The Proposed Settlement was Negotiated at Arm's-Length ........ 11

        3.   The Settlement Relief is Adequate ............................................. 12

        4.   Class Members Are Treated Equitably Relative to Each Other ... 15

        5.   The Notice Plan Satisfies Due Process ....................................... 16

        6.   Class Counsel's Opinions ........................................................... 18

VI.   ATTORNEYS' FEES AND TMING OF PAYMENT ........................................ 18

VII.  CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

### CASES

*Access Now, Inc. v. Claire's Stores, Inc.*,
  2002 WL 1162422 (S.D. Fla. May 7, 2002) ..................................................................... 17
*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................................. 9
*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ........................................................................................... 10
*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006) ....................................................................................... 16
*Burrows v. Purchasing Power, LLC*,
  No. 1:12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) .................................. 9
*Elkins v. Equitable Life Ins. of Iowa*,
  1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ..................................................................... 19
*Gonzalez v. TCR Sports Broad. Holding, LLP*,
  2019 WL 2249941 (S.D. Fla. May 24, 2019) ................................................................... 12
*Gustin v. Digges*,
  2009 WL 10670320 (M.D. Fla. Dec. 22, 2009) ................................................................ 19
*Hanley v. Tampa Bay Sports & Ent. LLC*,
  No. 8:19-CV-550-CEHCPT, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ................... 18
*Hansberry v. Lee*,
  311 U.S. 32 (1940) ............................................................................................................. 10
*Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) .................................................................. 19
*Ibrahim v. Acosta*,
  326 F.R.D. 696 (S.D. Fla. 2018) ....................................................................................... 10
*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................................... 14
*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ................................................................. 14
*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ....................................................................................... 18
*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
  No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ................................ 14
*In re Target Corp. Customer Data Security Breach Litig.*,
  No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015) ......................... 15
*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) .............................................................................. 16
*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ........................................................................................... 14
*In re Warfarin*,
  391 F.3d ............................................................................................................................. 14

*Inre CenturyLink Sales Pracs. & Sec. Litig.*,
   2020 WL 7133805 (D. Minn. Dec. 4, 2020) ............................................................ 17
*Kyriazi v. Western Elec. Co.*,
   647 F.2d 388 (3d Cir.1981) ..................................................................................... 16
*Lipuma v. American Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) .......................................... 9, 11, 12, 17
*M.D. v. Centene Corp., Inc.*,
   2020 WL 7585033 (S.D. Fla. Oct. 7, 2020) ............................................................ 17
*Nelson v. Mead Johnson & Johnson Co.*,
   484 F. App'x 429 (11th Cir. 2012) ........................................................................ 13
*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .................................................................................. 16
*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................. 11
*Pollard v. Remington Arms Co., LLC*,
   320 F.R.D. 198 (W.D. Mo. 2017) .......................................................................... 16
*Saccoccio v. JP Morgan Chase Bank, N.A.*,
   297 F.R.D. 683 (S.D. Fla. 2014) ..................................................... 12, 17
*Warren v. City of Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1988) ...................................................................... 18
*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) .............................................................................. 18
*Wolff v. Cash 4 Titles*, No.,
   03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .............................. 18

## RULES

Fed. R. Civ. P. 23(a) ...................................................................................................... 8
Fed. R. Civ. P. 23(a) and (b)(3) ..................................................................................... 9
Fed. R. Civ. P. 23(a)(1) .................................................................................................. 9
Fed. R. Civ. P. 23(a)(2) .................................................................................................. 9
Fed. R. Civ. P. 23(a)(3) .................................................................................................. 9
Fed. R. Civ. P. 23(a)(4) .................................................................................................. 9
Fed. R. Civ. P. 23(b) ...................................................................................................... 9
Fed. R. Civ. P. 23(b)(3) .................................................................................................. 9
Fed. R. Civ. P. 23(e) ..................................................................................................... 10
Fed. R. Civ. P. 23(e)(2) ........................................................................................... 10, 18
Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................... 15
Fed. R. Civ. P. 23(g) ..................................................................................................... 11

## OTHER AUTHORITIES

H. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed.) ..................................... 17

Plaintiffs Stephany Alcala; Benjamin J. Liang; Amber Lowe, on behalf of herself and her minor children C.B., K.B., M.B., and G.M; David Runkle; and Suzanne Johnson ("Plaintiffs"), submit this Unopposed Motion for Final Approval of Class Action Settlement and Memorandum of Law in Support ("Motion").

## I.    **INTRODUCTION**

This case arises from a data breach in 2021 affecting a data platform then in use by defendant 20/20 Eye Care Network, Inc. ("ECN"), a subsidiary of defendant iCare Acquisition ("iCare") (collectively with ECN, "Defendants") (the "Data Incident"). Plaintiffs allege that Defendants are accountable for the harm caused to Plaintiffs and approximately 4 million similarly situated individuals by their failure to properly secure and safeguard the sensitive personally identifiable information (PII) of current and former customers' patients, including their names, dates of birth, Social Security numbers, and protected health information (PHI), such as the patients' medical identification numbers and health insurance information. [ECF No. 52, ¶¶ 96, 97]

The information subject to the Data Incident was by a person(s) who was not authorized to take it. Thus, Plaintiffs maintain that Defendants had a duty to keep the Class's information private, and they did not. The settlement at issue was achieved with the assistance of the Honorable John Thornton (Ret.) and after many weeks of arms' length adversarial negotiations.[1] On December 5, 2022, this Court granted preliminary approval of the settlement. [ECF No. 85]

The settlement provides relief to Class Members affected by the Data Incident in a variety of ways including reimbursement for Out-of-Pocket expenses, ordinary and those related to actual Identity Fraud, Lost Time, as well as the option to receive either Identity Monitoring protection or

---

[1] The "Settlement Agreement" or "S.A." is the Settlement Agreement attached as Exhibit 1 to the Declaration of Gayle M. Blatt in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, filed October 28, 2022. [ECF No. 81-1.]

a Cash Payment. As detailed further herein, the Notice plan approved by this Court [ECF No. 85] was implemented at Defendants' expense, outside of the settlement fund established by Defendants. Pursuant to the Notice plan, direct mail postcard notice was sent by U.S. mail to the class population.

As part of granting preliminary approval of the settlement, the Court appointed Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator. *Id.* Epiq received contact information for the Class Members from the Defendants pursuant to the notice plan. Cameron R. Azari ("Azari Decl.") at ¶ 10. Epiq then disseminated individual notice by mail of the settlement and its multiple benefits to the Class in accordance with the timeline set by the Order Granting Preliminary Approval. *Id.* at ¶¶ 11, 14, 16. The Settlement Website 2020EyeCareDataBreach.com went live on January 18, 2023. ¶¶ 16. According to Epiq, the notice reached 86.9% of the Class. *Id.* at ¶ 6, 15. And, the response of the Class has been overwhelmingly positive, including the fact that minimal Class Members opted-out, and not a single Class Member objected. Accordingly, and as set forth below, the Court should grant final approval of the class action settlement.

## II.   <u>CASE SUMMARY</u>[2]

In the wake of the Data Incident, six proposed class action lawsuits were filed in the U.S. District Court for the Southern District of Florida (one having been removed), alleging that Defendants breached the legal duties they owed to Plaintiffs and Class Members to keep sensitive information confidential and protected from unauthorized disclosure or access. The six matters were consolidated by Court order on June 28, 2021. [ECF No. 11; *see also* ECF Nos. 22, 35.]

Since then, Plaintiffs filed two consolidated amended complaints, [ECF Nos. 37, 52]; responded to Defendants' motion to dismiss Plaintiffs' First Amended Consolidated Class Action

---

[2] A complete procedural history is fully set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support, at ECF No. 81.

Complaint; Defendants' Motion to Strike Punitive Damages and Special Relationship Allegations was pending [ECF No. 59] as was Defendants' Motion to Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint [ECF No. 60]. Plaintiffs filed an Unopposed Motion for Leave to File a Third Amended Consolidated Class Action Complaint [ECF No. 62].

The parties selected Judge John Thornton (Ret.) to mediate this case, and in accordance with the parties' motion [ECF No. 65] the Court on July 11, 2022, ordered that mediation occur on July 25, 2022. [ECF No. 68.]

On July 25, 2022, the parties mediated via an all-day Zoom Video Conference. The arm's-length negotiations were hard fought with considerable exchange of information between the parties and Judge Thornton before and during the mediation. The negotiations centered on Plaintiffs' ability to prove liability and damages since there were significant factual issues about injury and the manner in which the Data Breach occurred. The parties were unable to reach settlement that day. Nevertheless, settlement negotiations continued, and progress was made toward settlement after the July 25, 2022, mediation.

On August 1, 2022, the Court granted the parties' Joint Motion for Extension of the Stay of Proceedings and for Extension of Deadline to File Mediator's Report. [ECF Nos. 69-70.] On August 15, 2022, the parties advised the Court they were making considerable progress with Judge Thornton's assistance and hoped to reach a settlement within days. [ECF No. 71.] After extensive continued negotiations, on August 26, 2022, the parties advised the Court they reached a mediated negotiated settlement in principle. [ECF No. 75.]

On October 28, 2022, pursuant to the deadline set and slightly enlarged by this Court, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support. [ECF No. 81.] Following a status conference on November 30, 2022, this Court entered an order granting preliminary approval of the Settlement on December 5,

2022. [ECF No. 85.] On March 17, 2023, Plaintiffs filed their Unopposed Motion for Fee Award and Litigation Costs and Incorporated Memorandum of Law. [ECF No. 88.]

## III.   SETTLEMENT TERMS

### A.   The Settlement Class

The proposed Settlement Class is defined as "All Persons who were sent a notification from either ECN or HCN as a result of the Data Incident." S.A., ¶ IV.1.s. After de-duplication of Class Member information for the 4.2-million-person Class, the Settlement Administrator sent Notice to 3,976,023 individuals on the class list. *See* Azari Decl., ¶¶ 10-11.

### B.   The Settlement Benefits

Defendants agreed to fund a non-reversionary cash settlement fund in the amount of $3,000,000. S.A., ¶ IV.2.a. The Defendants also agreed to reimburse Class Members for actual identity fraud for up to $5,000.00 per Class Member for up to $600,000.00 in total, outside the Settlement Fund, on a claims-made basis. Defendants separately agreed to pay for the entirety of the costs of Notice to the Class and administration of the Settlement. To the extent the total amount of the Approved Claims at the end of the Claims Period were to exceed or be less than the amount in the Settlement Fund, the cash benefits would be decreased or increased on a pro rata basis, after the payment in full of the three years of Identity Monitoring claims. S.A., ¶ IV.2.a.5-6.

The Settlement Fund will be used to pay for the following benefits to the Settlement Class:

### 1.   Reimbursement for Lost Time

Class Members could make a claim for reimbursement for time spent preventing identity fraud or dealing with receipt of the Notice of the Data Incident of up to ten (10) hours at $25 per hour upon attestation. To receive this benefit, Class Members simply had to affirm they lost time resulting from the Data Incident and provide a brief description of the time spent. *Id.*

4

### 2. Identity Monitoring or Alternative Cash Payments

Class Members had the option to elect either thirty-six (36) months of Identity Monitoring protection or, in the alternative, a Cash Payment of $50.00 per person. *Id.*

### 3. Reimbursement of Out-of-Pocket Losses

Class Members were able to submit a claim for reimbursement for Out-of-Pocket losses reasonably traceable to the Data Incident of up to $2,500 per Class Member. To claim this benefit, Class Members had to provide documentation, and declare under penalty of perjury their belief that the claimed losses were due to the Data Incident. *Id.* Examples of Out-of-Pocket losses include unreimbursed credit monitoring and identity theft protection, and expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges related to the security incident. *See* Claim Form, Ex. D to S.A.

The documentation necessary to establish Out-of-Pocket Losses was not overly burdensome and could consist of documents such as "receipts, voided checks, bank statements, or other documents showing the amount of your losses and/or a detailed narrative description." *See* Settlement Website. If additional information was needed, the Settlement Administrator would contact the individual. *Id.* All cash benefits described above are subject to proration based on the number and dollar amounts of Approved Claims.

### 4. Identity Restoration Services

All Class Members are entitled to access fraud assistance/identity restoration services ("Identity Restoration Services") offered through IDX for a period of three years, regardless of whether they submit a claim under the Settlement. Declaration of Gayle M. Blatt ("Blatt Decl.") ¶ 11, Ex. D to S.A. This coverage provides Class Members with access to fraud resolution specialists who can assist with important tasks in the event they are the victims of future identity fraud. Services typically include placing fraud alerts with the credit bureaus, disputing inaccurate

information on credit reports, scheduling calls with creditors and other service providers, and working with law enforcement and government agencies to dispute fraudulent information. This Settlement benefit allows those Class Members who did not submit a claim under the Settlement to have access to help in the event they experience fraud or identity theft in the future.

### 5.   Reimbursement of Out-of-Pocket Losses for Actual Fraud

In addition to the $3,000,000 common fund payment, and wholly separate from the Settlement Fund, Defendants agreed to compensate Class Members on a claims-made basis for verified actual identity fraud losses reasonably traceable to the Data Incident up to $5,000 per individual Class Member. S.A., ¶ IV.2.b.

### C.   Notice and Administration Costs and Expenses

As part of the Settlement, Defendants will pay all costs and expenses of Notice and Administration outside of and in addition to the Settlement Fund. S.A., ¶IV.2.c.

### D.   Attorneys' Fees, Costs, and Expenses

The Settlement Fund will be used to pay for an award of attorneys' fees and expenses approved by the Court. On March 17, 2023, Class Counsel moved for an attorneys' fee award of $750,000, which is 25% of the Settlement Fund, and costs and expenses in the amount of $10,754.15. [ECF No. 88] Blatt Decl., ¶ 33. The fee motion and supporting declarations were posted to the Settlement Website so Class Members could access and review it prior to submitting a claim, objection, or request for exclusion from the settlement. Not a single objection was received to Class Counsel's fee and expense request. Blatt Decl., ¶ 14.

### E.   Release of Claims

In exchange for the benefits provided under the Settlement, Class Members will release only any claims, costs, damages, expenses, exposure, liability, and/or loss, direct or indirect, under any theory or cause of action, at law or in equity, asserted or not asserted, known or unknown,

arising from or in any way related to the Data Incident. S.A., ¶ IV.1(p). The release is narrowly tailored to release only those claims that could have been brought against the "Released Parties" (as defined by the Settlement Agreement) in this action.

## IV.    CLASS NOTICE AND CLAIMS

On December 5, 2022, the Court appointed Epiq to serve as the Settlement Administrator, and send notices, create the settlement website, process claims, and answer Class Members' questions via mail, telephone, and email. [ECF No. 85 at 6.]

On October 25, 2022, Epiq received the Settlement Class list from the Defendants that included Class Members' names and physical address information. Azari Decl., ¶ 10. Following the de-duplication of Class Member information for the 4.2-million-person Class, Epiq concluded there were 3,976,023 individual Class Members. *Id.* Between January 18 and January 31, 2022, Epiq mailed the postcard notice to all Class Members with physical addresses via the U.S. Postal Service (USPS). *Id.*, ¶ 11. After skip tracing, forwarding, and the re-mail process, postcard notice was delivered to 3,455,448 of the 3,976,023 unique, identified Class Members that were sent notice. *Id.*, ¶ 15. This means the individual notice efforts reached approximately 86.9% of the identified Class Members that were sent notice. *Id.*

On January 18, 2023, the Settlement Website went live with links to important case documents, answers to frequently asked questions, and an online claim portal. *Id.*, ¶ 16.

The deadline for Class Members to submit claim forms was May 1, 2023. *Id.*, ¶ 20. As of May 15, 2023, Epiq received 26,165 Claim Forms (25,734 online and 431 paper). *Id.* As is standard practice, Epiq is in the process of conducting a complete review and audit of all Claim Forms received. *Id.*, fn. 5. There is a likelihood that after detailed review, the total number of Claim Forms received will change due to duplicate and denied Claim Forms, though Epiq does not anticipate this change to be substantial. *Id.*, ¶ 20.

As of May 15, 2022, Epiq received 5,494 claims for reimbursement of time spent at $25/hr., totaling $604,525; 1,819 Class Members opted to enroll in credit monitoring, 22,663 Class Members opted for the alternative $50 Cash Payment; and 28 submitted valid claims for reimbursement of Out-of-Pocket losses currently estimated not to exceed $7,862.18. *Id*. Additionally, two valid claims were submitted for Out-of-Pocket losses due to actual identity fraud, currently estimated not to exceed $5,023.55. *See Id*., fn. 5.

As discussed *infra*, this preliminary claims data suggests the Approved Claims will receive full payments, and likely a proration upwards to all Class Members for the Time Spent and Cash Payment benefits. Epiq is continuing to review the documentation for claims for Out-of-Pocket reimbursement and losses due to Identity Fraud. *Id*.

The deadline to request exclusion from, or object to, the Settlement was April 3, 2023. *Id*., ¶ 21. As of May 15, 2023, Epiq has received eight valid requests for exclusion. Epiq also received seven additional requests for exclusion that do not comply with the requirements for requesting exclusion as set forth in the Settlement Agreement. *Id*. The parties agreed to provide the individuals whose requests for exclusion were deficient the opportunity to cure, and Epiq is following up with those individuals to provide that opportunity.[3] *Id*. Additionally, there have been no objections to the Settlement. *Id*.

## V.   **ARGUMENT**[4]

### A.   **Class Certification for Settlement**

When one or more plaintiffs seek class certification for purposes of settlement, courts must ensure the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the

---

[3] See Request for Exclusion Report, included as Attachment 4 to Cameron Azari's declaration.
[4] Defendants do not agree with each and every characterization of the applicable law or the underlying facts in the instant Motion, nor do Defendants join in the filing of same. However, Defendants do support the final approval of the Settlement and agree that it is a fair, adequate, and reasonable resolution of the cases filed.

requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)).

This Court previously analyzed each relevant factor at the preliminary approval stage and concluded the prerequisites of Rules 23(a) and (b)(3) were met. Specifically, this Court found that the numerosity requirement of Rule 23(a)(1) is satisfied because the Class includes approximately four million people. ECF No. 85 at ¶ 6. Likewise, the commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law and fact common to the Class Members, which predominate over any individual questions. *Id.*

Additionally, the typicality requirement of Rule 23(a)(3) is met because Plaintiffs' claims arise from the same Data Incident and legal duty Defendants had to protect the PII and PHI. *Id.* Further, the Court found the adequacy requirement of Rule 23(a)(4) was satisfied because Plaintiffs' have the same interest in the Settlement's relief and their interests are coextensive with the Class, and counsel are qualified, competent, and have extensive experience and expertise. *Id.* This Court also found the predominance and superiority requirements of Rule 23(b)(3) were met. *Id.* Specifically, this Court concluded the "factual and legal questions far outweigh the individualized questions surrounding amount and entitlement to damages, and in fact, the Settlement is designed to address these individualized questions in the claims process." *Id.*

Nothing has occurred in the interim to disturb the Court's conclusion that this case meets the prerequisites of Rule 23(a) and (b)(3), and certification for settlement purposes is appropriate.

B.     <u>The Settlement is Fair, Reasonable, and Adequate</u>

A court may approve a class action settlement pursuant to Rule 23(e) only after a hearing, and only on finding the settlement is "fair, reasonable, and adequate" after considering whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal, how the relief will be distributed, the terms governing attorneys' fees; and any side agreements; and (4) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In assessing whether a settlement is fair, reasonable, and adequate, courts in this Circuit can also consider the so-called *Bennett* factors, which include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In weighing these factors, the court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.* (citations omitted). As this Court preliminarily determined, each of the relevant factors support the fairness of the proposed settlement.

1.     **The Class was Adequately Represented**

The adequacy of representation issue typically considered in connection with class certification involves two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation" and "(2) whether plaintiffs have interests antagonistic to those of the rest of the class." *Ibrahim v. Acosta*, 326 F.R.D. 696, 701 (S.D. Fla. 2018) (quotations omitted); *see also Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940).

Here, Plaintiffs are members of the Class and do not possess any interests antagonistic to the Class. Their PII and PHI and that of the Class were provided to Defendants, and Plaintiffs allege their PII and PHI was compromised by the Data Breach, their legal claims are the same and Plaintiffs and the Class desire the same outcome of this litigation, and under the Settlement here, they have the opportunity to claim the same benefits.

Additionally, the Court has already recognized Class Counsel's experience and qualifications in appointing them as Settlement Class Counsel pursuant to Rule 23(g), and the record shows Class Counsel worked diligently to bring this case to a positive resolution. *See* Blatt Decl. ¶ 19; [ECF No. 85.] Because Plaintiffs and their counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2.      The Proposed Settlement was Negotiated at Arm's-Length

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Action, under the supervision of a neutral and experienced mediator. Blatt Decl. ¶ 20. These circumstances weigh in favor of approval. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318–19; Manual for Complex Litig. § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

11

### 3.   The Settlement Relief is Adequate

#### a)   *Plaintiffs had Sufficient Information to Weigh the Benefits of the Settlement*

The stage of litigation is evaluated to ensure plaintiffs have enough information to "adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. And, "[e]arly settlements are favored" so that "vast formal discovery need not be taken." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (citations omitted). Though the parties here were operating under a discovery stay, the parties engaged in substantial informal discussion and discovery regarding this matter from the beginning and later, in anticipation of settlement negotiations and as part of the mediation process. Blatt Decl. ¶ 21.

Class Counsel further relied on their experience presenting expert evidence and litigating the key legal issues in major data breach cases to assist in evaluating the merits of this case. *Id*. As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325. Accordingly, Plaintiffs had more than sufficient information available to weigh the benefits of Settlement against further litigation. *See, e.g., Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("the early settlement reached between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

#### b)   *Adequacy of relief*

This Settlement offers comprehensive relief to the Class,  including: compensation for up to 10 hours of Lost Time at $25 per hour; the option to elect either 36 months of Identity Monitoring protection or a Cash Payment of $50.00; access to Identity Restoration Services for

three years after the Settlement is finalized; a $2,500 cap per individual on Out-of-Pocket losses; and a per individual $5,000 cap on actual identity fraud losses

While claim submissions are still being vetted, the preliminary claims data suggests there will be a proration of benefits upward due to the number and dollar amount of Approved Claims, and the amount of the Net Settlement Fund. Blatt Decl., ¶ 22. The Settlement Agreement defines the "Net Settlement Fund" as the amount of funds available after the deduction of attorneys' fees and litigation expenses.[5] *Id*.

If the fees and expenses are approved in the amounts requested, approximately $2,239,245.85 will remain in the Net Settlement Fund to pay claims for Lost Time, Identity Monitoring or Cash Payments, and Out-of-Pocket expenses. Based on current claims data, the exposure for claims is approximately $1,745,537.18, and the 1819 claims for Identity Monitoring services will be secured according to the Settlement Agreement. As of May 15, 2023, if all approved claims for Cash Payments, Lost Time, and Out-of-Pocket Losses are paid, the benefits will be prorated upward and paid out approximately as follows: Cash Payments of $60-64.00 per person, Lost Time paid at approximately $31.00 per hour, and the claimed Out of Pocket expenses will be prorated upward as well. These are meaningful amounts for every type of relief offered under this Settlement. Blatt Decl., ¶ 23

Class Counsel believe the relief is fair, reasonable, adequate, and superior to many comparable settlements on record. *Id*., ¶ 25, 32, 36. The Court may rely upon such experienced counsel's judgment in assessing the fairness of the Settlement. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.").

---

[5] The Notice and Administration costs and expenses are paid by Defendants outside of the Settlement Fund. S.A., ¶ IV.2.c.

c)      *Risks, costs, and delay of continued litigation*

The costs, risks, and delay of trial and appeal weigh in favor of settlement approval. The relief offered by the Settlement is adequate considering the risks of continued litigation which were made clear by the extensive and well-reasoned opinion issued by the Court that provided guidance to both parties as to the merits of their respective positions. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiffs' claims would still need to succeed through motion practice, including on a motion for class certification, and likely survive an appeal thereof.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason judicial policy so strongly favors resolving class actions through settlement, "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin*, 391 F.3d at 535; *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"). This is not only a complex case, but it is in an especially risky field of litigation: data breach. *See, e.g., In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").

Data breach cases, such as this one, can be especially risky, expensive, and complex. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . .  many resources would necessarily be

spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk.

d)      *Relief Distribution Method is Effective*

The settlement distribution process is designed to be efficient and effective. The claim form was straightforward and allowed Class Members to make claims for three years of Identity Monitoring Services or alternatively, a Cash Payment, reimbursement of Out-of-Pocket Losses, Lost Time, and/or reimbursement for money spent as a result of identity fraud. Class members were notified they could access other settlement benefits such as Identity Restoration for up to three years after the Settlement is final without filing a claim. Blatt Decl. ¶ 28. Documentation requirements were not onerous, and not required for many benefits. *Id*.

Within 60 days of the Effective Date, the Settlement Administrator shall calculate the Net Settlement Fund and disburse the Net Settlement Fund to Class Members who made a claim on a pro rata basis, according to the proration plan set forth in the Settlement Agreement. *Id*. Ex. 1, ¶ IV.4.

e)      *Agreements Required to be Identified by Rule 23(e)(3)*

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There is no separate agreement between the parties. Blatt Decl. ¶ 29.

**4.      Class Members Are Treated Equitably Relative to Each Other**

The last Rule 23(e) requirement is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members

15

equitably relative to each other because all Class Members are eligible for the same settlement benefits for a variety of data breach harms. Blatt Decl. ¶ 30.

### 5.     The Notice Plan Satisfies Due Process

#### a)     *Adequacy of Notice*

A class notice must provide sufficient information about the settlement and give sufficient opportunity for response in order to satisfy the due process requirement. *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 677 (S.D. Fla. 2006), citing *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 395 (3d Cir.1981). The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Courts recognize that notice reaching between 70% and 95% of a class is reasonable, and the median is 87% reach on approved notice plans. *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092 (N.D. Ill. 2021) (citation omitted).

The Notice was provided to Class Members in accordance with the plan approved in the Court's Order Certifying Settlement Class and Granting Preliminary Approval of Class Action Settlement and Notice Program [ECF No. 85], through direct mailing and posting on the settlement website. Azari Decl., ¶¶ 11-16. The Class Notice reached approximately 86.9% of the Class through direct mailing. *Id.* at ¶ 15. Additionally, the settlement website had 37,821 unique visitor sessions resulting in 248,280 web pages being presented, and Epiq received 7,534 calls regarding this settlement. *Id.* at ¶¶ 16-17. Under these circumstances, the Notice fairly apprised the Class of the proposed settlement terms and of the options open to them.

The claims rate is also within an acceptable range. There were 26,165 claim form submissions (excluding denied and duplicates) out of a Class of 3,976,023 individuals, or a 0.66% claims rate. "Courts around the country have approved settlements where the claims rate was less than one percent." *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214-215 (W.D. Mo.

2017), aff'd, 896 F.3d 900 (8th Cir. 2018) (collecting cases that approved settlements with less than one percent claims rates.); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. CV 17-2832, 2020 WL 7133805, at *16 (D. Minn. Dec. 4, 2020) (approving settlement where 120,000 claims were filed out of a Class of 17.2 million.).

The Notice was the best practical, and the response and claims rates are within the acceptable range for final approval.

> b)       *Reactions of the Class*

The reaction of the class is also an important factor for courts to consider. *Lipuma*, 406 F. Supp. 2d at 1324. A low number of objections suggests the settlement is reasonable. *See Id*. The Class was given ample opportunity to review and object to the proposed class action settlement and/or to Plaintiffs' application for attorneys' fees and litigation costs filed on March 17, 2023 [ECF No. 88] before the close of the objection period. The deadline for Class Members to opt-out or object was April 3, 2023. Fifteen (15) individuals requested exclusion (0.0004%) and no Class Members objected to the Settlement. *Id*. This "strongly favors" final approval. *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The fact that no objections have been filed strongly favors approval of the settlement."); *see also* ALBA CONTE & H. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed.) ("[c]ourts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections") (citations omitted); *see, e.g., M.D. v. Centene Corp., Inc.*, 2020 WL 7585033, at *7 (S.D. Fla. Oct. 7, 2020) ("low percentage of objections demonstrates the reasonableness of the settlement and supports its approval as fair and reasonable") (cleaned up); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) ("low resistance to the settlement . . . weighs in favor of approving the settlement.").

### 6. Class Counsel's Opinions

The Court should also give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). Class Counsel fully endorse this Settlement and believe the range of benefits provided and claimed compare favorably to many data breach settlements on record. Blatt Decl., ¶ 32.

For these reasons, the Court should have no hesitation affirming its preliminary conclusion the Settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

## VI. <u>ATTORNEYS' FEES AND TMING OF PAYMENT</u>

Plaintiffs filed their motion seeking attorneys' fees in the amount of $750,000, which is 25% of the Settlement Fund on March 17, 2023. [ECF No. 88] As stated in their motion, Class Counsel believe this request is appropriate given a number of factors, including the time, effort, and skill brought to this litigation and results achieved. Blatt Decl., ¶ 33.

The fee request is supported by awards made in similar cases as "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-550-CEHCPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (citing *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding 33% is consistent with the market rate in class actions); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming attorneys' fee award of 33 1/3% to class counsel)).

Additionally, Class Counsel are not seeking attorneys' fees for benefits made available outside of the Settlement Fund Therefore, an award of 25% of the Settlement Fund is below the average in Florida District Courts and the Eleventh Circuit. *See Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide-roughly one-third.") (collecting case law from the Middle and Southern District of Florida awarding attorneys' fees comprising one third of common fund).

Further, at the time Plaintiffs filed their fee motion, Class Counsel had a combined lodestar with a negative multiplier. The negative multiplier supports the reasonableness of the fee request. *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *13 (M.D. Fla. Mar. 23, 2021) (holding that "negative multiplier of 0.33" supports reasonableness of fee request where "[t]ypically, courts award a [positive] multiplier range of 2.5 to 4 in class actions."), report and recommendation adopted, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021).

Additionally, the lack of class member objections supports the fee request. Notice was sent to settlement Class Members directly via U.S. mail informing them Class Counsel would seek $750,000 and litigation costs of up to $35,000 (Plaintiffs' motion only requested $10,754.15), and provided instructions regarding how to review the fee motion that was posted on the Settlement Website. *Id*. The lack of objections to Class Counsel's fee request supports a finding that it is reasonable and should be approved. *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881 at *12 ("The lack of objections by the Class also supports the Counsel's fee request" equaling one-third of settlement fund); *Gustin v. Digges*, 2009 WL 10670320, at *3 (M.D. Fla. Dec. 22, 2009) ("the lack of objections by Settlement Class members, substantiate the [attorneys' fee] award of 33%" of settlement fund); *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741, at *36 (M.D. Fla. Jan. 27, 1998) ("The lack of objections is itself important evidence that the requested fees are fair.").

## VII.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs file this unopposed Motion and respectfully request the Court enter an order granting final approval of the Settlement, awarding Class Counsel attorneys' fees in the amount of $750,000 and litigation costs and expenses in the amount of $10,754.15, and entering final judgment in this matter. In accordance with the Settlement Agreement, Plaintiffs request the Court retain jurisdiction until one hundred twenty (120) days after the Net Settlement Fund has been exhausted. S.A., ¶ IV.4.g.


Dated: May 16, 2023                              Respectfully submitted,

                                                 **MORGAN & MORGAN COMPLEX**
                                                 **  LITIGATION GROUP**
                                                 <u>/s/ Francesca Kester</u>
                                                 Francesca Kester s Florida Bar No. 1021991
                                                 Jean S. Martin (*Pro hac vice*)
                                                 201 N. Franklin Street, 7th Floor
                                                 Tampa, FL 33692
                                                 Telephone: 813.223.5505
                                                 fkester@forthepeople.com

                                                 *Counsel for Plaintiffs*

                                                 **CASEY GERRY SCHENK FRANCAVILLA**
                                                 **  BLATT & PENFIELD, LLP**
                                                 Gayle M. Blatt (*Pro hac vice*)
                                                 110 Laurel Street
                                                 San Diego, CA  92101
                                                 Telephone: 619.238.1811
                                                 gmb@cglaw.com

                                                 *Co-Lead Counsel for Plaintiffs and the Class*

                                                 **CHESTNUT CAMBRONNE PA**
                                                 Bryan L. Bleichner (*Pro hac vice*)
                                                 100 Washington Avenue South, Suite 1700
                                                 Minneapolis, MN  55401
                                                 Telephone: 612.339.7300
                                                 bbleichner@chestnutcambronne.com

                                                 *Co-Lead Counsel for Plaintiffs and the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Dorothy P. Antullis (0890421)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561.750.3000
Fax: 561.750.3364
dantullis@rgrdlaw.com

**MARKOVITS, STOCK &DEMARCO, LLC**
Terence R. Coates (*Pro Hac Vice*)
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: 513.651.3700
Fax: 513.665.0219
tcoates@msdlegal.com

**THE LYON FIRM**
Joseph M. Lyon (*Pro Hac Vice*)
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: 513.381.2333
Fax: 513.721.1178
jlyon@thelyonfirm.com

**HELLMUTH & JOHNSON PLLC**
Nathan D. Prosser (*Pro Hac Vice*)
8050 West 78th Street Edina, MN 55439
Telephone: 952.941.4005
Fax: 952.941.2337
nprosser@hjlawfirm.com

**CLAYEO C. ARNOLD,**
**  A PROFESSIONAL LAW CORP.**
M. Anderson Berry (*Pro Hac Vice*)
865 Howe Avenue
Sacramento, CA 95825
Telephone: 916.777.7777
aberry@justice4you.com

*Counsel for Plaintiffs*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Francesca Kester*
Francesca Kester