## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CIV-61275-RAR

**WENSTON DESUE**, *individually and*
*as legal guardian of N.D. and M.D.*
*and all others similarly situated*,

      Plaintiff,

v.

**20/20 EYE CARE NETWORK, INC.**, *et al.*,

      Defendants.

_____/

### ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
### AND PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

**THIS CAUSE** comes before the Court upon Plaintiffs Stephany Alcala; Benjamin J. Liang; Amber Lowe, on behalf of herself and her minor children C.B., K.B., M.B., and G.M; David Runkle; and Suzanne Johnson ("Plaintiffs") Unopposed Motion for Final Approval of Class Action Settlement, filed on May 16, 2023 ("Final Approval Motion") [ECF No. 95], and on Plaintiffs' Unopposed Motion for Fee Award and Litigation Costs, filed on March 17, 2023 ("Fee Motion"), [ECF No. 88], (together, the "Motions"). The Court held a Final Approval Hearing on June 27, 2023. [ECF No. 99]. For the reasons stated herein, the Court grants Plaintiffs' Motions.

### BACKGROUND[1]

This case arises from a data breach in 2021 ("Data Incident") affecting a data platform of Defendant 20/20 Eye Care Network, Inc., a subsidiary of Defendant iCare Acquisition (collectively, "Defendants" and with Plaintiffs, "Parties"). In the wake of the Data Incident, six proposed class action lawsuits were filed in the U.S. District Court for the Southern District of

---

[1]   A complete procedural history is fully set forth in the Court's Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. [ECF No. 85] at 2–5.

Florida (one having been removed), alleging that Defendants breached the legal duties they owed to Plaintiffs and Class Members to keep sensitive information confidential and protected from unauthorized disclosure or access.  The six matters were consolidated by Court order on June 28, 2021.  [ECF No. 11]; *see also* [ECF Nos. 22, 35].

Plaintiffs filed two consolidated amended complaints, [ECF Nos. 37, 52], and responded to Defendants' Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint, [ECF No. 41].  While Defendants' Motion to Strike Punitive Damages and Special Relationship Allegations, [ECF No. 59], and Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Consolidated Complaint, [ECF No. 60], were pending, Plaintiffs filed an Unopposed Motion for Leave to File Third Amended Consolidated Class Action Complaint.  [ECF No. 62].  After the Court granted leave to file the Third Amended Consolidated Class Action Complaint, the parties moved to stay the proceedings to engage in formal settlement discussions. [ECF No. 65].

The Parties selected Judge John Thornton (Ret.) to mediate this case, and in accordance with the Parties' Joint Motion to Stay Proceedings, [ECF No. 65], the Court on July 11, 2022, ordered that mediation occur on July 25, 2022.  [ECF No. 68].  On July 25, 2022, the Parties mediated in an all-day Zoom Video Conference.  The Court finds that the Parties engaged in arm's-length negotiations after considerable exchange of information between the Parties and Judge Thornton before and during the mediation.   Settlement negotiations continued, and considerable progress was made towards a settlement after the July 25, 2022, mediation.

On August 1, 2022, the Court granted the Parties' Joint Motion for Extension of the Stay of Proceedings and for Extension of Time to File Mediator's Report.  [ECF Nos. 69, 70].  On August 15, 2022, the Parties advised the Court that they were making considerable progress with Judge Thornton's assistance and hoped to reach a settlement within days.  [ECF No. 71].  After

extensive negotiations, on August 26, 2022, the Parties advised the Court that they had reached a mediated negotiated settlement in principle.  [ECF No. 75].

On October 28, 2022, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support.  [ECF No. 81].  On December 5, 2022, the Court entered an Order Granting Preliminary Approval of the Settlement.[2] [ECF No. 85]. As part of granting preliminary approval of the settlement, the Court appointed Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator.  Epiq received comprehensive contact information for the Class Members from the Defendants pursuant to the notice plan.  [ECF No. 95–2] Ex. D, Decl. of Cameron R. Azari ("Azari Decl.") ¶ 10.  Epiq then disseminated notice of the settlement and its multiple benefits in accordance with the timeline set by the Order Granting Preliminary Approval.  *Id.* ¶¶ 11, 14, 16.  The Settlement Website 2020EyeCareDataBreach.com went live on January 18, 2023.  *Id.* at ¶ 16.  According to Epiq, the notice reached 86.9% of the Class, *id.* ¶¶ 6, 15, and the response of the Class has been positive.

On March 17, 2023, Plaintiffs filed their Fee Motion, [ECF No. 88], and on May 16, 2023, Plaintiffs filed their Final Approval Motion.  [ECF No. 95].  In support of final approval, Plaintiffs maintain that the Settlement provides relief to Class Members affected by the Data Incident in a variety of ways, including reimbursement for Out-of-Pocket expenses, ordinary and those related to actual Identity Fraud, Lost Time, as well as the option to receive either Identity Monitoring protection or a Cash Payment.  Plaintiffs also stated that the Notice plan approved by this Court was implemented at Defendants' expense, outside of the settlement fund established by Defendants.  Pursuant to the Notice plan, direct mail postcard notice was sent by U.S. mail to the class population.

---

[2] The "Settlement Agreement" or "S.A." is the Settlement Agreement attached as Exhibit 1 to the Declaration of Gayle M. Blatt in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, filed October 28, 2022. [ECF No. 81–1].

<u>**THE SETTLEMENT TERMS**</u>

### A. *The Settlement Class*

The proposed Settlement Class is defined as "All Persons who were sent a notification from either ECN or HCN as a result of the Data Incident." S.A., ¶ IV.1.s. After de-duplication of Class Member information for the 4.2-million-person Class, the Settlement Administrator sent Notice to 3,976,023 individuals on the class list. *See* Azari Decl., ¶¶ 10–11.

### B. *The Settlement Benefits*

Defendants agreed to fund a non-reversionary cash Settlement Fund in the amount of $3,000,000. S.A., ¶ IV.2.a. Defendants also agreed to reimburse Class Members for actual identity fraud for up to $5,000.00 per Class Member for up to $600,000.00 in total, outside the Settlement Fund, on a claims-made basis. Defendants separately agreed to pay for the entirety of the costs of Notice to the Class and administration of the Settlement. To the extent the total amount of the Approved Claims at the end of the Claims Period were to exceed or be less than the amount in the Settlement Fund, the cash benefits would be decreased or increased on a pro rata basis, after the payment in full of the three years of Identity Monitoring claims. S.A., ¶ IV.2.a.5-6. The Settlement Fund will be used to pay for the following benefits to the Settlement Class:

#### 1. *Reimbursement for Lost Time*

Class Members were able to make claims for reimbursement for time spent preventing identity fraud or dealing with receipt of the Notice of the Data Incident of up to ten (10) hours at $25 per hour upon attestation. S.A., ¶ IV.2.a.3. To receive this benefit, Class Members must have only affirmed that they lost time resulting from the Data Incident and provide a brief description of the time spent. *Id.*

### 2. *Identity Monitoring or Alternative Cash Payments*

Class Members had the option to elect either thirty-six (36) months of Identity Monitoring protection or, in the alternative, a Cash Payment of $50.00 per person.  S.A., ¶ IV.2.a.2.

### 3. *Reimbursement of Out-of-Pocket Losses*

Class Members were able to submit a claim for reimbursement for Out-of-Pocket losses reasonably traceable to the Data Incident of up to $2,500 per Class Member.  S.A., ¶ IV.2a.1.  To claim this benefit, Class Members had to provide documentation, and declare under penalty of perjury their belief that the claimed losses were due to the Data Incident.  *Id.*  Examples of Out-of-Pocket losses include unreimbursed credit monitoring and identity theft protection, and expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges related to the security incident.  *See* Claim Form, Ex. D to S.A.

The documentation necessary to establish Out-of-Pocket Losses was not overly burdensome and could consist of documents such as receipts, voided checks, bank statements, or other documents showing the amount of losses and/or a detailed narrative description.  *See* Settlement Website.  If additional information was needed, the Settlement Administrator would contact the individual.  *Id.*  All cash benefits described above are subject to proration based on the number and dollar amounts of Approved Claims.

### 4. *Identity Restoration Services*

All Class Members are entitled to access fraud assistance/identity restoration services ("Identity Restoration Services") offered through IDX through the period of three years, regardless of whether they submit a claim under the Settlement.  Decl. of Gayle M. Blatt ("Blatt Decl.") [ECF No. 95–1] ¶ 11; *see also* Ex. D to S.A.  This coverage provides Class Members with access to fraud resolution specialists who can assist with important tasks in the event they are the victims of future identity fraud.  Services typically include placing fraud alerts with the credit bureaus,

disputing inaccurate information on credit reports, scheduling calls with creditors and other service providers, and working with law enforcement and government agencies to dispute fraudulent information. This Settlement benefit allows those Class Members who did not submit a claim under the Settlement to have access to help in the event they experience fraud or identity theft in the future.

### 5. Reimbursement of Out-of-Pocket Losses for Actual Fraud

In addition to the $3,000,000 common fund payment, and wholly separate from the Settlement Fund, Defendants agreed to compensate Class Members on a claims-made basis for actual verified identity fraud losses reasonably traceable to the Data Incident up to $5,000 per individual Class Member. S.A., ¶ IV.2.b.

### C. Notice and Administration Costs and Expenses

As part of the Settlement, Defendants will pay all costs and expenses of Notice and Administration outside of and in addition to the Settlement Fund. S.A., ¶ IV.2.c.

### D. Attorneys' Fees, Costs, and Expenses

The Settlement Fund will be used to pay for an award of attorneys' fees and expenses approved by the Court. On March 17, 2023, Class Counsel moved for an attorneys' fee award of $750,000, which is 25% of the Settlement Fund, and costs and expenses in the amount of $10,754.15. [ECF No. 88]; Blatt Decl., ¶ 33. The fee motion and supporting declarations were posted to the Settlement Website so Class Members could access and review them prior to submitting a claim, objection, or request for exclusion from the settlement. No objections were received to Class Counsel's fee and expense request. Blatt Decl., ¶ 14.

### E. Release of Claims

In exchange for the benefits provided under the Settlement, Class Members will release only any claims, costs, damages, expenses, exposure, liability, and/or loss, direct or indirect, under

any theory or cause of action, at law or in equity, asserted or not asserted, known or unknown, arising from or in any way related to the Data Incident.  S.A., ¶ IV.1(p).  The release is narrowly tailored to release only those claims that could have been brought against the "Released Parties" (as defined by the Settlement Agreement) in this action.

## CLASS NOTICE AND CLAIMS

On December 5, 2022, the Court appointed Epiq to serve as the Settlement Administrator, and directed that Epiq send notices, create the settlement website, process claims, and answer Class Members' questions via mail, telephone, and email.  [ECF No. 85] at 6.

On October 25, 2022, Epiq received the Settlement Class list from Defendants that included Class Members' names and physical address information.  Azari Decl., [ECF No. 95–2] ¶ 10. Following the de-duplication of Class Member information for the 4.2-million-person Class, Epiq concluded there were 3,976,023 individual Class Members.  Id.  Between January 18 and January 31, 2022, Epiq mailed the postcard notice to all Class Members with physical addresses via the U.S. Postal Service (USPS).  Id. ¶ 11.  After skip tracing, forwarding, and the re-mail process, postcard notice was delivered to 3,455,448 of the 3,976,023 unique, identified Class Members that were sent notice.  Id. ¶ 15.  This means the individual notice efforts reached approximately 86.9% of the identified Class Members that were sent notice.  Id.

On January 18, 2023, the Settlement Website went live with links to important case documents, answers to frequently asked questions, and an online claim portal.  Id. ¶ 16.

The deadline for Class Members to submit claim forms was May 1, 2023.  Id. ¶ 20.  As of June 15, 2023, Epiq received 26,179 Claim Forms (25,735 online and 444 paper).  [ECF No. 98]; Suppl. Decl. of Cameron Azari ("Suppl. Azari Decl.") [ECF No. 98] ¶ 17.  Epiq is in the process of conducting a complete review and audit of all Claim Forms received.  Azari Decl., n.5.  Epiq reports there is a likelihood that after detailed review, the total number of Claim Forms received

will change due to duplicate and denied Claim Forms, though Epiq does not anticipate this change to be substantial. *Id.* ¶ 20.

As of June 15, 2022, Epiq received 5,526 claims for reimbursement of time spent at $25/hr.; 1,828 Class Members opted to enroll in credit monitoring; 22,747 Class Members opted for the alternative $50 Cash Payment; and 26 submitted valid claims for reimbursement of Out-of-Pocket losses. Suppl. Azari Decl. ¶ 17. Additionally, one valid claim was submitted for Out-of-Pocket losses due to actual identity fraud. *Id.* This claims data suggests the Approved Claims will receive full payments, and likely a proration upwards to all Class Members who submitted claims for the Time Spent, Cash Payment, and Out-of-Pocket Losses benefits. Epiq is continuing to review the documentation for claims for Out-of-Pocket reimbursement and losses due to Identity Fraud and an opportunity to cure defective claims is underway. Azari Decl., n.5.; Suppl. Azari Decl. ¶ 18.

The deadline to request exclusion from, or object to, the Settlement was April 3, 2023. Azari Decl. ¶ 21. As of June 15, 2023, Epiq has received ten (10) valid requests for exclusion.[3] Epiq has also received five (5) additional requests for exclusion that have not yet complied with the requirements for requesting exclusion as set forth in the Settlement Agreement. Suppl. Azari Decl. ¶ 19. The Parties agreed to provide the individuals whose requests for exclusion were deficient the opportunity to cure, and Epiq is following up with those individuals to provide an opportunity to cure the deficiencies.[4] *Id.* Additionally, as of June 15, 2023, no objections to the Settlement had been submitted. *Id.*

---

[3] Requests for Exclusions Report included as Attachment 1 to the Suppl. Azari Decl. [ECF No. 98] at 9.

[4] At the time of the Final Approval Hearing on June 27, 2023, the Parties discussed with the Court the potential for a future request for supplemental distribution of uncashed payments. In addition, the Parties addressed that certain claims for settlement benefits and requests for exclusion were identified as defective for lack of supporting or identifying documentation and were within the period to cure such defects. The Parties shall present the Court with a complete list of requests for exclusion and claims as part of the proposed plan of distribution following the expiration of time for Class Members to deposit their settlement benefits pursuant to the Settlement Agreement.

## ANALYSIS

### A. *Legal Standard for Final Approval*

When one or more plaintiffs seek class certification for purposes of settlement, the Court must ensure the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'"  *Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)).

Courts must approve the settlement of a class action to ensure the settlement is fair, reasonable, and adequate.  FED. R. CIV. P. 23(e).  A court may approve a class action settlement pursuant to Rule 23(e) only after a hearing, and only on finding the settlement is "fair, reasonable, and adequate" after considering whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal, how the relief will be distributed, the terms governing attorneys' fees, and any side agreements; and (4) whether class members are treated equitably relative to each other.  FED. R. CIV. P. 23(e)(2).  As a matter of public policy, courts favor class action settlements for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also Jairam v. Colourpop Cosmetics, LLC*, No. 19-62438, 2020 WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements").

To determine whether a settlement is ultimately fair, adequate, and reasonable, courts in this circuit look to six so-called *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.  Courts can rely on "the judgment of experienced counsel for the parties" when evaluating these factors.  *Colourpop Cosmetics*, 2020 WL 5848620, at *3 (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012)).  Also, "[i]n evaluating a settlement's fairness, 'it should not be forgotten that compromise is the essence of a settlement." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) (alteration accepted) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  "Above all, the court must be mindful that inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id.* (citation and internal quotation marks omitted).  As demonstrated below, the Settlement meets these standards.

### B. *Class Certification for Settlement*

This Court previously analyzed each relevant Rule 23 factor at the preliminary approval stage and concluded the prerequisites of Rules 23(a) and (b)(3) were met.  Specifically, this Court found that the numerosity requirement of Rule 23(a)(1) is satisfied because the Class includes approximately four million people.  [ECF No. 85] ¶ 8.  Likewise, the commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law and fact common to the Class Members, which predominate over any individual questions.  *Id*. at 9.

Additionally, the Court found that the typicality requirement of Rule 23(a)(3) is met because Plaintiffs' claims arise from the same Data Incident and legal duty Defendants had to protect the PII and PHI.  *Id*. at 9-10.  Further, the Court found the adequacy requirement of Rule 23(a)(4) was satisfied because Plaintiffs have the same interest in the Settlement's relief and their

interests are coextensive with the Class, and counsel are qualified, competent, and have extensive experience and expertise. *Id*. at 10. This Court also found the predominance and superiority requirements of Rule 23(b)(3) were met. *Id*. at 11. Specifically, this Court concluded the "factual and legal questions far outweigh the individualized questions surrounding amount and entitlement to damages, and in fact, the Settlement is designed to address these individualized questions in the claims process." *Id*.

Nothing has occurred in the interim to disturb the Court's conclusion that this case meets the prerequisites of Rule 23(a) and (b)(3), and certification for settlement purposes is appropriate.

### C. The Settlement is Fair, Reasonable, and Adequate

As this Court preliminarily determined, the requirements under Rule 23(e), coupled with the relevant *Bennett* factors, support the fairness of the proposed settlement.

#### 1. The Class was Adequately Represented

The adequacy of representation issue typically considered in connection with class certification involves two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation" and "(2) whether plaintiffs have interests antagonistic to those of the rest of the class." *Ibrahim v. Acosta*, 326 F.R.D. 696, 701 (S.D. Fla. 2018) (quotations omitted); *see also Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).

Here, upon review of the record, the Court finds that Plaintiffs are members of the Class and do not possess any interests antagonistic to the Class. Plaintiffs allege their PII and PHI and that of the Class were provided to Defendants, and that the confidentiality of their information was compromised by the Data Incident. Further, their legal claims are the same and Plaintiffs and the Class desire the same outcome of this litigation, and under the Settlement here, they have the opportunity to claim the same benefits.

Additionally, the Court has already recognized Class Counsel's experience and qualifications in appointing them as Class Counsel pursuant to Rule 23(g), and the record shows Class Counsel worked diligently to bring this case to a positive resolution. *See* Blatt Decl. ¶ 19. Because Plaintiffs and their counsel have devoted substantial time and resources to this litigation, the adequacy requirement is satisfied.

### 2.  *The Proposed Settlement Was Negotiated at Arm's-Length*

The Court also finds that the Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Action, under the supervision of a neutral and experienced mediator. *See* Blatt Decl. ¶ 20. These circumstances weigh in favor of approval. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19; *Manual for Complex Litigation* (Third) § 30.42 (1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotations omitted).

### 3.  *The Settlement Relief Is Adequate*

#### a)  *Plaintiffs had sufficient information to weigh the benefits of the Settlement*

The stage of litigation is evaluated to ensure plaintiffs have enough information to "adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324 (citations omitted). And, "[e]arly settlements are favored" so that "vast formal discovery need not be taken." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (citations omitted). Though the Parties were operating under a discovery stay, the Parties engaged in substantial informal discussion and discovery

regarding this matter from the beginning and later, in anticipation of settlement negotiations and as part of the mediation process.  *See* Blatt Decl. ¶ 21.

Additionally, Class Counsel relied on their experience presenting expert evidence and litigating the key legal issues in major data breach cases to assist in evaluating the merits of this case.  *Id.*  As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case."  *Lipuma*, 406 F. Supp. 2d at 1325.  Accordingly, the Court finds Plaintiffs had sufficient information available to weigh the benefits of Settlement against further litigation.  *See, e.g.*, *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-20048, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("[T]he early settlement reached between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

### b)  *Adequacy of relief*

This Settlement offers comprehensive relief to the Class as stated above, including: compensation for up to 10 hours of Lost Time at $25 per hour; the option to elect either 36 months of Identity Monitoring protection or a Cash Payment of $50.00; access to Identity Restoration Services for three years after the Settlement is finalized; a $2,500 cap per individual on Out-of-Pocket losses; and a per individual $5,000 cap on actual identity fraud losses.

The current claims data suggests there will be a proration of benefits upward due to the number and dollar amount of approved claims, and the amount of the Net Settlement Fund.  *See* Blatt Decl. ¶ 22.  The Settlement Agreement defines the "Net Settlement Fund" as the amount of funds available after the deduction of attorneys' fees and litigation expenses.[5]  *Id.*

---

[5] The Notice and Administration costs and expenses are paid by Defendants outside of the Settlement Fund. *See* [ECF No. 81-1], Ex 1, IV.2.c.

If the fees and expenses are approved in the amounts requested, approximately $2,239,245.85 will remain in the Net Settlement Fund to pay claims for Lost Time, Identity Monitoring or Cash Payments, and Out-of-Pocket expenses.  Based on current claims data as of June 15, 2023, the total amount of the validated claims to date is approximated at $1,731,424.43, and the 1,828 claims for Identity Monitoring services will be secured according to the Settlement Agreement.  If all approved claims for benefits are determined to be valid, proration upward would result in the following approximate distributions of the Settlement Fund: Cash Payments of $60-64.00 per person, Lost Time paid at approximately $31.00 per hour, and the claimed Out of Pocket expenses will be prorated upward as well.  Collectively, these are meaningful amounts for every type of relief offered under this Settlement.

Class Counsel assert the relief is fair, reasonable, adequate, and superior to many comparable settlements on record.  *See* Blatt Decl. ¶ 25.  The Court may rely upon such experienced counsel's judgment in assessing the fairness of the Settlement.  *See, e.g.*, *Nelson*, 484 F. App'x at 434 ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (internal quotations omitted).

### c) *Risks, costs, and delay of continued litigation*

The costs, risks, and delay of trial and appeal weigh in favor of settlement approval.  The relief offered by the Settlement is adequate considering the risks of continued litigation which the Parties assert were addressed in the Court's detailed opinions issued in this case, that provided guidance to the Parties as to the merits, strengths, and weaknesses of their respective positions.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason judicial policy so strongly favors resolving class actions through settlement; indeed, "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also*

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").  This is not only a complex case—it lies within an especially risky field of litigation: data breach.  *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").

The Plaintiffs assert that data breach cases, such as this one, can be especially risky, expensive, and complex.  *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky.  This unsettled area of law often presents novel questions for courts.  And of course, juries are always unpredictable."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in . . . data-breach case[s] are novel").  Because the "legal issues involved [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues."  *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).  The Court finds that through the Settlement, Plaintiffs and Class Members gain benefits without having to face further risk.

### d) *Relief distribution method is effective*

The settlement distribution process as designed was efficient and effective.  The claim form was straightforward and allowed Class Members to make claims for three years of Identity Monitoring Services or alternatively, a Cash Payment, reimbursement of Out-of-Pocket Losses, Lost Time, and/or reimbursement for money spent as a result of identity fraud.  Class members were notified they could access other settlement benefits such as Identity Restoration for up to

three years after the Settlement is final without filing a claim.  *See* Blatt Decl. ¶ 28.  Documentation

requirements were not onerous, and not required for some of the benefits.  *Id*.

Within 60 days of the Effective Date, the Settlement Administrator shall calculate the

Net Settlement Fund and disburse the Net Settlement Fund to Class Members who made a claim

on a pro rata basis, according to the proration plan set forth in the Settlement Agreement.  *Id*. Ex. 1;

S.A. ¶ IV.4.

### e)  *Agreements Required to Be Identified by Rule 23(e)(3)*

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any

agreement made in connection with the proposal."  The Court is advised there are no separate

agreements between the Parties.  *See* Blatt Decl. ¶ 29.

### 4.  *Class Members Are Treated Equitably Relative to Each Other*

Rule 23(e) requires that the Court determine the Settlement "treats class members equitably

relative to each other."  FED. R. CIV. P. 23(e)(2)(D).  Here, the Settlement treats Class Members

equitably relative to each other because all Class Members are eligible for the same settlement

benefits for a variety of data breach harms.  *See* Blatt Decl. ¶ 30.

### 5.  *The Notice Plan Satisfies Due Process*

### a)  *Adequacy of Notice*

A class notice must provide sufficient information about the settlement and give sufficient

opportunity for response in order to satisfy the due process requirement.  *See Borcea v. Carnival

Corp.*, 238 F.R.D. 664, 677 (S.D. Fla. 2006) (citing *Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 395 (3d

Cir. 1981)).  "[T]he class must be notified of a proposed settlement in a manner that does not

systematically leave any group without notice."  *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d

615, 624 (9th Cir. 1982).  Courts recognize that notice reaching between 70% and 95% of a class

is reasonable, and the median is 87% reach on approved notice plans. *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092 (N.D. Ill. 2021) (citation omitted).

The Notice was provided to Class Members in accordance with the plan approved in the Court's Order Certifying Settlement Class and Granting Preliminary Approval of Class Action Settlement and Notice Program, [ECF No. 85], through direct mailing and posting on the settlement website. Azari Decl. ¶¶ 11–16. The Class Notice reached approximately 86.8% of the Class through direct mailing. Suppl. Azari Decl. ¶ 12. Additionally, the settlement website had 38,770 unique visitor sessions resulting in 249,830 web pages being presented, and Epiq received 7,730 calls regarding this settlement. *Id.* ¶¶ 13–14. Under these circumstances, the Court finds the Notice fairly apprised the Class of the proposed settlement terms and of the options open to them.

The claims rate is also within an acceptable range. There were 26,165 claim form submissions (excluding denied and duplicates) out of a Class of 3,976,023 individuals, or a 0.66% claims rate. "Courts around the country have approved settlements where the claims rate was less than one percent." *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214-215 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) (collecting cases that approved settlements with less than one percent claims rates); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-2795, 2020 WL 7133805, at *16 (D. Minn. Dec. 4, 2020) (approving settlement where 120,000 claims were filed out of a class of 17.2 million.).

The Court finds the Notice was the best practical, and the response and claims rates are within the acceptable range for final approval.

### b) *Reactions of the Class*

The reaction of the class is also an important factor for the Court to consider. *Lipuma*, 406 F. Supp. 2d at 1324. A low number of objections suggests the settlement is reasonable. *See id.*

The Class was given ample opportunity to review and object to the proposed class action settlement and/or to Plaintiffs' application for attorneys' fees and litigation costs filed on March 17, 2023 [ECF No. 88] before the close of the objection period. The deadline for Class Members to opt-out or object was April 3, 2023. Fifteen (15) individuals requested exclusion (0.0004%) and no Class Members objected to the Settlement. *Id*. This "strongly favors" final approval. *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The fact that no objections have been filed strongly favors approval of the settlement."); *see also* H. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed.) ("[c]ourts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections") (citations omitted); *see, e.g.*, *M.D. v. Centene Corp., Inc.*, No. 18-22372, 2020 WL 7585033, at *7 (S.D. Fla. Oct. 7, 2020) ("low percentage of objections demonstrates the reasonableness of the settlement and supports its approval as fair and reasonable") (cleaned up); *Saccoccio*, 297 F.R.D. at 694 ("low resistance to the settlement . . . weighs in favor of approving the settlement.").

### 6.  *Class Counsel's Opinions*

The Court should also give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (quoting *Cotton*, 559 F.2d at 1330). Class Counsel endorse this Settlement and believe the range of benefits provided and claimed compare favorably to many data breach settlements on record. *See* Blatt Decl. ¶¶ 25, 32, 36.

For these reasons, the Court finds that the Settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

## ATTORNEYS' FEES, COSTS, AND TIMING OF PAYMENT

Plaintiffs filed their motion seeking attorneys' fees in the amount of $750,000, which is 25% of the Settlement Fund, on March 17, 2023. [ECF No. 88]. As stated in their Motion, Class Counsel believe this request is appropriate given a number of factors, including the time, effort, and skill brought to this litigation and the results achieved. *See* Blatt Decl. ¶ 33.

The fee request is supported by awards made in similar cases as "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-CV-550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (citing *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding 33% is consistent with the market rate in class actions)); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming attorneys' fee award of 33 1/3% to class counsel).

The Court further finds that the fee request is reasonable and appropriate under the so-called *Camden* factors used by courts in this Circuit in determining court-awarded attorneys' fees in common fund class actions settlements, namely: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 772 (11th Cir. 1991).

Additionally, Class Counsel are not seeking attorneys' fees for benefits made available outside of the Settlement Fund. Therefore, an award of 25% of the Settlement Fund is below the average in Florida District Courts and the Eleventh Circuit. *See Wolff*, 2012 WL 5290155, at *5–6 ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (collecting case law from the Middle and Southern District of Florida awarding attorneys' fees comprising one third of the common fund).

Further, at the time Plaintiffs filed their fee motion, Class Counsel had a combined lodestar with a negative multiplier. This negative multiplier supports the reasonableness of the fee request. *See In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186-TPB-SPF, 2021 WL 1341881, at *13 (M.D. Fla. Mar. 23, 2021) (holding that "negative multiplier of 0.33" supports reasonableness of fee request where "[t]ypically, courts award a [positive] multiplier range of 2.5 to 4 in class actions"), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021).

Additionally, the lack of class member objections supports the fee request. Notice was sent to settlement Class Members directly via U.S. mail informing them Class Counsel would seek $750,000 and litigation costs, and provided instructions regarding how to review the fee motion that was posted on the Settlement Website. The lack of objections to Class Counsel's fee request supports a finding that it is reasonable and should be approved. *See Health Ins. Innovations*, 2021 WL 1341881 at *12 ("The lack of objections by the Class also supports the Counsel's fee request" equaling one-third of settlement fund); *Gustin v. Digges*, No. 6:08-cv-57-Orl-31DAB, 2009 WL 10670320, at *3 (M.D. Fla. Dec. 22, 2009) ("the lack of objections by Settlement Class members, substantiate the [attorneys' fee] award of 33%" of settlement fund); *Elkins v. Equitable Life Ins. Co. of Iowa*, No. CivA96-296-Civ-T-17B, 1998 WL 133741, at *36 (M.D. Fla. Jan. 27, 1998) ("The lack of objections is itself important evidence that the requested fees are fair."). Thus, for

the reasons set forth in this Order, Class Counsel's request for reimbursement of litigation expenses in the amount of $10,754.15 is also approved as reasonable and appropriate.

## **CONCLUSION**

The Court has jurisdiction over the subject matter of this action and all Parties to the action, including Settlement Class Members.  The Court certifies the Settlement Class and **GRANTS** final approval of the Settlement for the reasons discussed above.  All persons who satisfy the class definition and did not opt out of the Settlement Class are Class Members for purposes of this Settlement and are bound by this Order.  The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the U.S. Constitution.  Furthermore, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees and Costs and awards Class Counsel $750,000 in attorneys' fees and $10,754.15 in litigation costs and expenses.

Pursuant to the Settlement Agreement, within **ten (10) days** after the the Effective Date, as defined in the Settlement Agreement, Defendants shall fully fund the Settlement Fund.  Within **fourteen (14) days** of the Effective Date, the Court-approved attorney's fees and litigation costs shall be paid from the Settlement Fund.  Within **sixty (60) days** of the Effective Date, the Settlement Administrator shall calculate the Net Settlement Fund and disburse the Net Settlement Fund to Settlement Class Members who made a claim on a pro rata basis.  Class Members must accept the deposit of all such payments within **one hundred twenty (120) days** of the Effective Date.  The Settlement Administrator will contact any Class Member who has not cashed their settlement check or monies by that date, and to the extent necessary to effectuate the settlement payment, shall reissue the payment which shall be valid for **sixty (60) days**.  If funds still remain in the Net Settlement Fund **two hundred and ten (210) days** after the Effective Date, the parties shall file a request for supplemental distribution with a proposed plan of distribution for any such excess funds.

The Court reserves jurisdiction over the implementation, administration, and enforcement of this Settlement, and shall retain such jurisdiction for 120 days after either (a) the Net Settlement Fund has been exhausted, or (b) the proposed and approved plan of distribution of excess remaining Net Settlement Funds has been implemented, whichever occurs later.   This case is **DISMISSED *with prejudice***, and no costs shall be awarded other than those specified in this Order or provided by the Settlement Agreement.   The Clerk is instructed to **CLOSE** this case.   All deadlines are **TERMINATED**, and any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 8th day of July, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**